## GOLDING vs. MERCHANT & CO.

43  705<br>124  519

[ACTION ON PROMISSORY NOTE OR DUE BILL.]

1. *Principal, how bound by acts of agent; what improper charge to jury as to.*—A charge to the jury that a principal would be liable for the act of his agent, in borrowing money, and giving a note therefor in the name of the principal, when his acts and conduct were such as business men would ordinarily infer from them authority to do so, is erroneous.

2. *Same; what principal can not take advantage of.*—If the principal, by his declarations or conduct, authorized the opinion that he had given more extensive powers to the agent, than were in fact given, he should not be permitted to avail himself of the imposition.

3. *Agent, powers and extent of; by whom determined.*—The sufficiency of the evidence to establish the extent of the agent's powers, is a question for the jury, under appropriate instructions from the court.

6. *Agent, fraud of, against principal; when can not affect third persons.*—Evidence of fraud of the agent on his principal, is not admissible against third persons, in the absence of proof connecting them with it.

APPEAL from the Circuit Court of Mobile.
Tried before the Hon. C. W. RAPIER.

THE complaint in this cause contained two counts, one for money had and received, and a special count on a due-bill or promissory note, of which the following is a copy : " Mobile, Ala., Oct. 10th, 1865. Borrowed and received of Messrs. L. Merchant & Co., one thousand dollars, to be returned on demand. Wm. Golding, per R. Jump, agent." On the trial, at the spring term, 1868, issue was joined on the plea of *non est factum*, and judgment was rendered in favor of the appellees for eleven hundred and seventy-six dollars and twenty-six cents, and costs.

The material facts of the case, as shown by the bill of exceptions, are as follows : William Golding, the appellant, sent R. Jump to Mobile, as his agent, to sell a cargo of lumber, and afterwards extended his agency to superintending a contract which appellant had with the United States government, for raising and repairing two sunken

45

vessels in Mobile bay. Jump superintended the work under said contract, from some time in June to the 13th day of October, 1865. At first, appellant, who lived in New Orleans, La., required Jump to send him weekly statements of the amount necessary to carry on the work, which sometimes required as many as one hundred hands, and on receipt thereof, remitted the necessary funds. Afterwards, this mode of getting the money being found inconvenient, Jump drew sight drafts on appellant in New Orleans, in Jump's own name, which drafts he negotiated with a banker in Mobile, and (defendant) appellant paid them. Three days before he made the note sued on, Jump drew a draft upon appellant for two thousand dollars, which he refused to pay, and wrote Jump not to draw on him again. After the refusal to pay the draft, and after Jump had received appellant's letter, but before it was known to the appellees, Jump borrowed of appellees' agent, one Hollingsworth, one thousand dollars, and gave the note on which this suit was brought.

The appellees, for the purpose of proving Jump's authority, introduced Hollingsworth, who testified, that on one occasion, (some time before the note was made,) appellant was in the store, (ship chandlery, &c.,) and witness solicited his patronage; that appellant replied, that "Jump was his agent, and would attend to the business for him, he (appellant) resided in New Orleans; that Jump would procure what was necessary;" that witness did not understand this conversation as having any reference to money lending or borrowing, but only to selling by the plaintiff to appellant such articles as were in the appellees' line of business, and as he might need in the execution of the contract, &c. There was no evidence contrary to this, respecting the conversation. Witness further testified, that he knew, from conversation with defendant, (appellant,) that Jump was his agent at Mobile, for superintending and managing the work of raising said vessels; and that before he loaned the money for which the note sued on was given, he knew the fact of Jump's having drawn bills of exchange, &c., (as already related,) and that these bills were drawn for the purpose of raising money to carry on the work of

said contract; that on the 20th day of September, preceding the making of the note sued on, Jump borrowed four thousand dollars of one Captain DuBois, for which he gave a note signed in the name of his principal, by himself as agent, and at the same time drew on defendant for four thousand five hundred dollars, which draft was paid. With the proceeds of this draft, Jump repaid DuBois, without informing appellant of the transaction. There was no proof of appellant's knowing anything whatever of this transaction, until long after the note was·paid, and after the note in question was made. The testimony of appellant on this point was positive to the same effect. When Jump borrowed the four thousand dollars of Captain DuBois, he received one thousand dollars in cash, and a certificate of deposit for three thousand dollars on a State bank. Jump remitted this certificate of deposit, without any explanation whatever, to appellant, who had it cashed, supposing it was sent by Jump, as a favor to DuBois, who was an old friend of appellant. On the same day that Jump borrowed the money and gave the note sued on, he borrowed the same amount of DuBois, and gave a similar note· On Golding's arrival in Mobile, about the 13th of October, Golding discharged Jump, and refused to recognize his authority to bind him in giving said note. The money borrowed by Jump of DuBois, Golding paid, under protest that it was no legal obligation on him, but was done simply to save harmless an old friend, and as a favor, and the receipt for it so stated.

"The proof as to whether the money borrowed was necessary in prosecuting defendant's contract, was conflicting; the proof for the plaintiff tending to show that it was, and the proof for the defendant tending to show that it was not; that at the time the money was borrowed Jump had on hand a considerable amount of money of defendant, for which he had not accounted."

"There was no dispute as to the fact that Jump's employment extended only to the sale of the cargo of lumber and the receipt of the money therefor, and to the execution of plaintiff's contract with the government for raising and repairing the aforesaid vessels, and the sale of the cargo

of lumber and receiving the money therefor ; that no express authority was given him to borrow money for defendant, in his name, or to sign appellant's name to promissory notes or due-bills therefor, and no authority, express or implied, was given him to do so, unless it resulted from the proof already stated. There was no dispute that plaintiffs knew, at the time they lent the money, that Jump's usual mode of obtaining money, was by drawing bills as aforesaid."

The court charged the jury, "that an act of the agent would be binding on the principal, when the principal expressly authorized the act ; that the principal would be liable for the act of the agent, where, though he had not before the act given express authority for it, yet afterwards ratified it; that in some cases, where there was neither express authority before the act, nor a subsequent ratification of it, the principal would be liable, as where, from his orders, acts, and conduct, it would be ordinarily inferred by business men that he had given authority for the act." The court then told the jury to look to the evidence, and if there was no express authority to the agent to borrow money and give a note therefor, in the name of his principal, the defendant could not be held liable on the ground of express authority ; and if there was no evidence of a subsequent ratification of the act by the defendant, he could not be held liable on the ground of subsequent ratification ; but though there may have been neither express authority from the defendant before the act, nor a subsequent ratification of it by him, yet if such of his acts and conduct as were known to plaintiffs induced them to believe that defendant's agent was authorized to borrow the money and give a note therefor in defendant's name ; and if, from such acts and conduct, business men acquainted therewith would ordinarily have inferred authority on the part of the agent to borrow money and give a note therefor in the name of the defendant, then defendant would be liable therefor. The court then told the jury that it was for them to determine the effect of the conversation between defendant and Hollingsworth, and to say whether it was such as to lead Hollingsworth to believe that Jump was authorized to

borrow money and give a note therefor in defendant's name. If it was such as to lead Hollingsworth so to believe, then the defendant would be liable, but if it was not such, defendant would not be liable by reason of such conversation ; to all of which charges the defendant excepted.

Defendant then requested the court to charge the jury, that accepting and paying bills drawn by Jump on defendant, in Jump's own name, was not giving him authority to borrow money, or give defendant's note for money borrowed by Jump ; which charge the court refused to give, on the ground that it was calculated to mislead the jury—the court remarking at the time, that as to third persons, authority might be implied from such acts ; to which refusal to charge as requested, and the super-added remark, the defendant excepted.

The defendant further requested the court to charge the jury, that no authority can be drawn of a power to borrow money and make promissory notes, from such acts as Jump's drawing sight bills in his own name and disposing of them to a banker ; which charge the court refused to give, and defendant duly excepted.

The defendant further asked the court to charge the jury, that if Jump executed the note to raise money, after he had received a letter from Golding forbidding him to draw on him, then this is a circumstance from which the jury may presume fraud on the part of Jump ; which charge the court refused to give, and defendant duly excepted.

The defendant further asked the court to charge the jury, that the mere fact that the principal had accepted and paid bills of exchange drawn on him by an agent, will not make the principal liable for promissory notes executed in his name by such agent ; which charge the court refused to give, and defendant duly excepted.

R. H. SMITH, for appellant.—I. The court clearly erred in the charge given to the jury.

1. It directs the jury to determine whether there was express authority given Jump by Golding to borrow money, &c.

2. It referred it to the jury to determine whether there

was any subsequent ratification by Golding of Jump's act in borrowing the money of L. Merchant & Co.'s agent, Hollingsworth.

In both the above respects, the charge was abstract, and necessarily tended to mislead the jury, by referring to them for determination questions of fact, upon which the record shows there was no dispute, and the hypothesis suggested by the charge is directly opposed to all the proof.— 16 Ala. 407; 23 Ala. 598; 24 Ala. 376.

II. The court also erred in telling the jury, "that in some cases where there was neither express authority before the act (of Jump), nor a subsequent ratification of it, the principal would be liable, as where from his own acts and conduct, it would be ordinarily inferred by business men that he had given authority for the act."

This part of the charge asserts that the principal's liability depends on what would be ordinarily inferred by business men from certain acts and conduct, set out in the bill of exceptions, regardless of whether such inferences are correct conclusions of law from the acts and conduct given.—23 Ala. 652.

There being no evidence (for, as already stated, the record shows everything which was favorable to the appellee's case) of what business men would ordinarily infer from such acts, the charge directs the jury to speculate on what business men would infer. There being nothing to show that the jury was composed of business men (and it is well known that, in cities, they are not), or had any means of determining what business men would ordinarily infer, this part of the charge invites the jury to substitute their vague opinions for rules of law.

III. The court erred in charging the jury, "that, though there was neither express authority from Golding before the act, nor a subsequent ratification of it by him, yet, if such of his acts and conduct as were known to the plaintiffs, induced them to believe that defendant's agent was authorized to borrow the money and give a note therefor in defendant's name; and if, from such acts, business men acquainted therewith would ordinarily have inferred authority on the part of the agent to borrow money and give

a note therefor, in the name of the defendant, then the defendant would be liable ;" and this whether such conclusions would or would not be proper legal conclusions.

1. This part of the charge is even more objectionable than that just referred to, because the liability of the defendant is more distinctly asserted.

2. It is quite probable that a miscellaneous jury would think (and quite probable that they would be correct in believing) that the authority to draw a bill of exchange would properly lead business men to infer an authority to endorse or accept bills.

Merchants are constantly making such mistakes of legal conclusions.

Yet, we see that the legal effect of a power to draw does not include the power to endorse or accept bills.—1 Parsons on Notes and Bills, p. 107 (ed. 1867), and authorities there cited.

3. The language of all the books is " that the implied liability of a principal (for his agent's acts), arising from this principal's acts and conduct, depends on whether the principal has held out the agent to the parties dealing with him as having the power to do the act. The words used in every authority we can find, are " held out," and not " what business men ordinarily infer."—Story on Agency, §§ 132, 133 to 135, page 225 ; 9 Porter, 216 ; *Fisher v. Johnson & Campbell, ib.*

4. It must be a legal holding out, properly deduced as a legal conclusion from the acts, and not loose, untaught inferences of any class of men. The doctrine relied on by appellees does not relieve the appellees from the duty of learning the extent of Jump's authority at their peril.— Story on Agency, § 133, p. 225 ; 9 Porter, 216 ; *Fisher v. Johnson & Campbell, ib.*

The court erred in referring it to the jury to determine the effect of the conversation between appellant, Golding, and Hollingsworth, plaintiff's agent, and to say whether it was such as to lead Hollingsworth to believe that Jump was authorized to borrow money and give a note therefor in Golding's name ; and if it was such as to lead Hollingsworth so to believe, then the defendant would be liable, but

if it was not such, then the defendant would not be liable by reason of such conversation.

1. The court should have determined the legal effect of the conversation, there being no dispute in regard to what it was, and none in regard to what Hollingsworth actually did understand by it.—21 Ala. 736 ; 18 Ala. 744 ; 16 Ala. 318 ; 29 Ala. 108 ; 19 Ala. 693 ; 19 Ala. 612 ; 23 Ala. 652 658.

It must be remembered that there was no dispute as to what the conversation was. It was clear that it did not relate to the borrowing or lending of money in any way, and that Hollingsworth did not understand it as having any such relation to borrowing or lending moneys, but only to a solicitation by Hollingsworth for Golding's patronage in the way of ship chandlery, and it was clear that borrowing and lending money was not in the line of plaintiff's business.

The effect of the conversation is necessarily governed by these undisputed facts, and it was erroneous to tell the jury that it was their province to determine the legal effect of it. They were necessarily misled.

2. This part of the charge is abstract. The record shows affirmatively what Hollingsworth was led to believe by the conversation. The jury had no cause to pass upon it.

V. The court also erred in telling the jury, in effect, that Hollingsworth's inferences from said given conversation, furnished the rule by which the legal effect of such conversation was to be determined by the jury.

1. Golding's remark that Jump would procure all that was required, must be taken in connection with the conversation which drew forth the remark, and when so taken it is plain, as shown by the record, that the remark had no relation to lending or borrowing money, and must be confined to the purchase of such things required by Golding's contract, as were in L. Merchant & Co.'s line, viz : ship chandlery.

2. This part of the charge makes Golding's liability depend on what the jury thought Hollingsworth was actually led to believe by a given conversation, irrespective of the

character of the conversation, or the rationality of Hollingsworth's belief.

VI. The court erred in refusing the first charge asked by appellant.

1. It did not tend to mislead the jury. It called for a clear and simple conclusion of law, directly applicable to the facts, and easily understood by the jury in connection with the facts.

2. The qualification which the court added erroneously asserts :

" That, as to third parties, authority as an agent to borrow money, or to give his principal's note for money borrowed by the agent, may be implied from the fact that the principal has accepted and paid bills of exchange drawn on him by the agent."—See Parsons on Notes and Bills, (ed. of 1867), pp. 106, 107, 115, 116, and notes and authorities cited ; 5 Mass. Rep. 37 ; *Banorgee v. Harvey et al.*, 1 Ala. 565, 572 ; 23 Ala. 562 ; 6 Cushing, 117 ; 1 Parsons on Notes and Bills ; 1 H. Bl. 155 ; 6 Term Rep. 591 ; 1 Taunton, 347 ; 5 B. & Ald. 204 ; 7 Taunt. 455 ; 9 Bing. 19 ; 7 B. & Cress. 278 ; 1 M. & R. 66 ; 11 Gratt. 281 ; 3 Yerg. 107 ; Pick. 286 ; 2 Johns. 48 ; 4 Seld. 398 ; 9 Leigh, 47 ; 6 T. B. Mon. 82 ; 2 Greenleaf, 109 ; 10 Nut. 375 ; 27 Ala. 497 ; 10 Johns. 114 ; 6 Blackf. 369 ; 2 Mon. & G. 721 ; 8 Nut. 456 ; 2 Rich. 42 ; 10 Nut. 160  17 Ohio 466 ; 12 Ala. 252 ; 23 Pick. 302 ; 12 Mass. 237.

Such a construction of the law as the court below has made, is in conflict with the above authorities and many others. It would simply make it unsafe for a principal even to accept or pay any draft drawn on him by his distant agent, lest it should have the dangerous effect of authorizing third persons to infer that the agent had authority to borrow *ad libitum*, in his principal's name, and to scatter broadcast innumerable notes, unknown to the principal, signed by the agent with the principal's name. The advantage and security which bills of exchange give the principal in enabling him to control his distant agent's expenditures, by a simple non-acceptance of his drafts, whenever the agent becomes extravagant, wasteful, or vicious, would be lost entirely. For, as in this case, when-

ever the principal might see fit to cut short the agent's supplies of money until he could visit the spot and ascertain the agent's actual necessities, the agent could at once, under the construction of the court below, resort to borrowing (and if at all, on any scale), and making promissory notes in the principal's name.

The better view would appear to be that the acceptance of each bill of exchange is a separate and distinct act, not even implying a power in the agent to repeat the same, except, perhaps, under very peculiar circumstances, much less than promissory notes.—6 Cush. 117; *Charlotte Wood v. Levy Goodrich et al.*, pp. 123 and 124 ; 23 Pickering, 302 ; *Webber v. Williams College*, and authorities above cited.

VII. The court erred in refusing the second charge asked by appellant.—6 Cush. 117.

It is well settled that courts will watch with jealousy acts of agents in regard to the execution and negotiation of bills and promissory notes, and that even where the principal cases give express authority to do something in regard to promissory notes and bills, the court will not allow the authority to be enlarged by construction to do other things.—1 Parsons on Notes and Bills, pp. 107, 115, 116, and authorities above and there cited.

The court will judicially take notice of geographical situations, mails and telegraphic communication. New Orleans was but one day's distance from Mobile by the daily mail ; there is a telegraphic line between the places. L. Merchant & Co., the appel'ees, by their agent, Hollingsworth, had notice that Jump's usual mode of obtaining money was by drawing drafts.—See record. Jump's suddenly resorting to another and more secret power of promissory notes, was of itself sufficient to put appellees on their guard as to his authority. There was easy and rapid communication with Golding in New Orleans, if they had chosen to use them, and their having failed to inform themselves, under such circumstances, shows their negligence. *Vigilantibus et non dormientibus leges subveniunt.*

The maxim applies with more force where the loss must fall on one of two innocent parties. The jealousy of the courts above stated will be strictly applied in such cases.

· VIII. The court erred in refusing the third charge asked by appellant.

1. It was relevant for the defendant to show that Jump had acted fraudulently in executing the note and embezzling the money, as a means of showing that the money never was obtained for, or used in, Golding's business, or for his benefit, or by his authority; and for the further purpose of showing that Jump was acting outside the authority given him.

This evidence was relevant to defeat the recovery, on the common count, for "money paid," (which is found in the second complaint filed).

"Money paid" for another, without his request or consent, cannot be recovered on a count for "money paid."—2 Stewart, p. 500; 5 Ala. 258; 16 Ala. 53.

The bill of exceptions shows that Jump executed the note and borrowed the money after Golding had forbidden him to draw any more bills of exchange, and that there was a conflict of evidence as to whether the money borrowed by Jump in this instance was necessary, or even obtained, or used, to carry on Golding's business, and the proof was that Jump had, on other occasions, borrowed money of one DuBois, and returned it, without informing Golding of the loan, and that Golding knew nothing, either of the borrowing from DuBois, or from the appellee, until after the execution of the note sued on, and on his arrival in Mobile to discharge Jump. Appellant's proof tended to show that Jump ought to have had large sums of appellant's money unexpended when he borrowed this money of the appellee.

Where the question of fraud is involved, great latitude in the range of evidence is allowed, because it can rarely be shown except by a comprehensive and comparative view of the acts of the party to whom it is imputed, and it must often be inferred from many circumstances.—Shepherd's Digest of Alabama Reports, p. 627, Title, Evidence, sub-division, Fraud.

The question of fraud was relevant to the issue under the count for money paid, as well as under the count on the note, and the charge asked and refused, asserted a cor-

rect legal proposition, based on testimony which was before the jury, as shown by the bill of exceptions.

IX. The court erred in refusing the last charge asked by appellant, on grounds heretofore commented on, and for the further reason that, under the evidence and former charges given by the court, the jury might have found their verdict against Golding, and held him liable for the note made by Jump, without his authority, on the mere bare evidence that Golding had accepted and paid drafts drawn on him by Jump.

The refusal of the charge, in effect, asserts that the mere fact that a principal accepts bills of exchange drawn on him by his agent, and pays them, gives the agent authority to bind the principal, by promissory notes, made by the agent in the principal's name. It is not considered necessary to argue such a proposition.

It is to be remembered that the bill of exceptions shows that Golding had no knowledge that Jump had ever borrowed money and executed notes in his name to DuBois, or any one else, until he came to Mobile, after the execution of the note to appellee. Appellee cannot, therefore, rely on prior unauthorized acts of a similar character by Jump, which were unknown to appellant.

Subsequent to the execution of the note sued on, Golding, as a favor to his friend, DuBois, paid a note which Jump had given to DuBois, under the advice of counsel, and took a written acknowledgment that he did not recognize the authority of Jump to make the note, but paid it as a favor to his friend, DuBois.

The appellee was not prejudiced in any manner by this act of friendship towards DuBois, and he was not misled, or induced by it to part with his money, as it occurred subsequent to the execution of the note which he held.

It is well settled law that the authority of an agent must be proven by other evidence than the acts of the agent.

DARGAN & TAYLOR, contra.—The charges given and refused, must be considered in reference to the facts of the case before the court.

The defendant had made a heavy contract with the gov-

Golding v. Merchant & Co.

ernment, to raise and repair some two or three war vessels sunk in Mobile bay. He lived in New Orleans, and gave no attention himself to the business, but employed Mr. Jump to do the business. Time, skill, and a good deal of money was necessary, being near an hundred hands employed, and to be paid every Saturday night.

The defendant made Jump his general agent, to attend to all this business, and as such to do any and all things necessary to carry out and complete the business. He introduced Jump to the community with all such implied powers, so far as the public knew. No restraints were put upon his power and authority in this business. It would seem, therefore, if the money borrowed from the plaintiff in this case, by Jump for said business, was actually used in the business, in paying off hands, and was necessary to the performance thereof, the principal would be liable under the count for money had and received, without regard to the authority to sign a note. Jump, being here alone, hiring hands, and carrying on this heavy business as above described, with the full general powers from his principal, known to the lender, and it being a necessary part of the business to pay out money to the hands at stated periods, and common in such case to borrow small sums for immediate necessities, the defendant should have restrained the general powers of his agent, which was not done.

Upon the count on the note, the whole facts must be taken together,—the character of the business, the general powers of the agent, the purposes of the money, that the agent had before borrowed money, and had also borrowed a bill from DuBois on New York, which had been received by defendant and collected, and afterwards accepted a draft drawn by Jump to repay DuBois, and the fact that Jump had for some time been in the habit of raising money for the business by drawing bills on his principal, all of which were paid by the principal and known to plaintiff, buying goods charged to principal, hiring and paying hands, &c., — all must be taken together; and also the fact that there were two counts in the complaint.

The charges asked had to be given, or refused, as asked.

The first charge asked, standing alone as an abstract point of law, might not be erroneous, but when the objects and purposes of the bills are known, and their connection with all the other facts, the charge was properly refused, as abstract, and as calculated, as asked, to mislead. Nor was the charge confined to the authority to make the note. No objection or effort had been made to exclude this testimony from other testimony before the jury.

As to the second charge asked, the refusal was correct, for two reasons: First, because the letter requesting Jump not to draw any more bills, was placed alone on the ground that he had no more money in bank, and not as a prohibition to raise money otherwise; it, in fact, rather gave authority to seek other ways, by borrowing or otherwise, for the then time being, as his money in bank was out. Secondly, plaintiff knew nothing of this letter, and had nothing to do with private relations between principal and agent.

As to the third charge asked, it may be true, that the mere fact (standing alone) of drawing a bill on a man, would not authorize the drawer to act as agent, and make a note; but this charge, in view of the whole case, was entirely abstract, and would mislead the jury. The real question before the court was, whether the agent had authority to borrow the money for the purposes detailed; and the evidence of paying and accepting bills drawn to raise money for the same purposes as the note sued on, not taken alone, as asked, but in connection with the mass of other testimony, was material to make out the general agency and liability. But I think I could go further than this, and say, that if the agent was in the habit of borrowing money on bills to use in the business, all of which was known to all the parties, power to borrow, as in the case at bar, might also be implied; the difference is only in the form of the evidences given by the agent. If the agent had drawn a bill in this case, as in all the other borrowing, the previous bills would surely have been evidence of authority. What is the difference, if in this case he simply took a note or due bill, or if he had taken neither?—See *Dunlap's Agency*, Paley, side pp. 199–202, and notes; see, also, p. 209, and note *a*; 1 Hill, 501; 39 Ala. 33.

B. F. SAFFOLD, J.—The charge of the court to the jury, that if the acts and conduct of the defendant, which were known to the plaintiff, were such as, from them, business men would ordinarily infer authority to the agent to borrow money and give a note therefor, in the name of the defendant, he would be liable for the act of the agent in so doing, was erroneous, because it would be to make the ordinary inference of business men a test or rule of agency, independent of the agreement of the parties. It would be far more difficult to unravel the intricacy of what acts and conduct would be sufficient to create this inference, than to determine whether the declarations and conduct of the defendant were such, as, in the opinion of the jury, authorized the plaintiff to believe that he had conferred the power on the agent.

The correct doctrine is, that an agent with limited powers, can not bind his principal when he transcends them. A person transacting business with an agent, on the credit of his principal, is bound to know the extent of his authority; but if the principal, by his declarations or conduct, authorized the opinion that he had given more extensive powers to his agent, than were in fact given, he would not be permitted to avail himself of the information.—*Schimmelpenick et al. v. Bayard et al.*, 1 Peters, 264. The agency as claimed by the plaintiff was controverted, and there was evidence tending to establish it. The sufficiency of the evidence was a question for the jury, under appropriate instructions from the court.—*Bank of Montgomery v. Plannett's Adm'r*, 37 Ala. 222; *McDonald v. Br. Bank at Montgomery*, 20 Ala. 313; *McClung v. Spottswood*, 19 Ala. 165.

The first charge asked by the defendant, that accepting and paying bills drawn by Jump in his own name on the defendant, was not giving him authority to borrow money, or to give defendant's note for money which he had borrowed, was properly refused, as tending to mislead the jury. The abstract proposition is correct; but as an agency had been shown, these acts of the agent and the defendant, known to the plaintiffs, were circumstances to be considered by the jury in determining the extent of the powers of the agent. The remarks of the court, on refusing to

give the charge, were erroneous, for invading the province of the jury. To say that third parties might imply the authority from such acts, was to declare the sufficiency of the testimony.

The second and fourth charges asked by the defendant, were properly refused, for the reasons assigned in the consideration of the first. The third charge asked was irrelevant, and therefore properly refused. There was no testimony whatever tending to connect the plaintiff with the fraud of Jump.

The judgment is reversed, and the cause remanded.

NOTE BY REPORTER.—The opinion in this case was delivered at the June term, 1868, but was in some way mislaid, and was not found in time to be inserted in 42d Alabama Reports.