[No. 5019. Decided July 25, 1904.]

MONA GERTRUDE LOUGH, BY HER GUARDIAN AD LITEM, FREDERICK LOUGH, *Respondent,* v. JOHN DAVIS & COMPANY, *Appellant.*[1]

DANGEROUS PREMISES—NEGLIGENCE—PRINCIPAL AND AGENT—DUTY TO REPAIR—LIABILITY OF AGENT IN CHARGE OF BUILDING—OWNER A NONRESIDENT. Agents in charge of a building, charged with the duty to make repairs, are liable for failure to keep the same in a safe condition, resulting in personal injuries to the child of a tenant, especially if the owner is a nonresident, or if service of process upon him is impossible.

SAME—EVIDENCE—AUTHORITY OF AGENT—IMPLIED FROM CONDUCT. In an action against an agent of a nonresident owner of a building, for damages sustained by the child of a tenant, through want of repairs, the fact that certain other repairs were authorized and paid for by the agent, who collected the rents and had funds that could be applied thereto, coupled with the fact that the owner was a nonresident or absent, is admissible to show that the agent had authority to make repairs, where the authority was not in writing, since it may be proved by parol and the agency implied from the conduct of the parties.

SAME—EVIDENCE OF AGENT'S AUTHORITY—SUFFICIENCY—QUESTION FOR JURY. In an action against agents alleged to be charged

[1]Reported in 77 Pac. 732.

29-35 WASH.

with the duty to make repairs, brought on behalf of the child of a tenant to recover for injuries sustained by the breaking of a rotten railing on the second floor, a nonsuit is properly refused, where it appears that the agents, who collected the rents, ordered and paid for similar repairs, and personally supervised the same, apparently on their own authority, and the owner was a nonresident, or, at least, was never seen about the premises.

TRIAL—INSTRUCTIONS—COMMENT ON EVIDENCE. It is not reversible error to state the issues raised by the pleadings, although there may have been no evidence offered as to some of them, where the jury is properly instructed to base their findings entirely upon the evidence.

DANGEROUS PREMISES—NEGLIGENCE—AGENT CHARGED WITH DUTY TO REPAIR — EVIDENCE OF AUTHORITY — SUFFICIENCY — DENIAL OF AUTHORITY BY AGENT — DIRECTION OF VERDICT. The fact that agents testify that they had no authority to make repairs to a building except where it was specially given, and that none was given to repair a railing and banister, which was necessary for the safety of the occupants, does not warrant a directed verdict for the defendants, where the agents made some repairs apparently on their own authority, and testified, as to their authority, that the owner did not want to spend any more money than absolutely necessary, and where the janitor, under their orders, made and oversaw many small repairs such as securing the guard rail in question.

Appeal from a judgment of the superior court for King county, Griffin, J., entered July 28, 1903, upon the verdict of a jury rendered in favor of the plaintiff for personal injuries sustained by a child through the breaking of a second-story railing or banister. Affirmed.

*Chas. F. Munday,* for appellant.

*Frederick R. Burch* and *Robert H. Lindsay,* for respondents.

HADLEY, J.—This cause was once before in this court. See, *Lough v. John Davis & Co.,* 30 Wash. 204, 70 Pac. 491, 59 L. R. A. 802, 94 Am. St. 848. A demurrer to the complaint had been sustained by the lower court, and

this court reversed the judgment, holding that the complaint stated a cause of action. The essential facts averred in the complaint will be found stated in the former opinion. The question involved is that of the liability of an agent in charge of a building, for injuries received by a child who fell from an upper porch, by reason of a rotten and unsafe railing, the father and guardian *ad litem* of the child being a tenant of the building. The complaint averred that the defendant, a corporation, as agent of the owner, had full power and authority from the principal to keep the property in repair, and in safe condition for tenants. Upon the return of the cause to the superior court, the defendant answered, admitting that it had authority to rent the property and collect the rents, but denying the said allegations as to authority to repair. A trial was had before the court and a jury, resulting in a verdict for the plaintiff. The defendant moved for a new trial, which was denied, and judgment was entered upon the verdict. The defendant has appealed.

It is first assigned that the court erred in overruling the demurrer to the complaint. That question was passed upon by this court in the former appeal. Appellant now asks us to overrule that decision. The question was exhaustively examined and discussed before, and the decision is supported by eminent authority. We shall therefore adhere to the former ruling.

The property was owned by one Webb, and both he and the appellant were made parties defendant. Webb, however, was not served with process, and the question of his liability in the premises is therefore not before us. Respondent's complaint alleges that Webb was a nonresident of this state. The allegation was disputed by appellant, and there was testimony to the effect that he was a resident

of King county, and was available for the service of process. The record, however, shows an evident earnest effort on the part of respondent's counsel to find his location for the purpose of making service upon him, and this was supplemented by the sheriff's return that he could not find him in King county. There is also in the record a certified copy of a deed executed by Webb, bearing date December 18, 1901, in which he recites that he was "formerly of King county, state of Washington, but now of Staunton county, state of Virginia." The complaint was verified and filed a little more than one month before the date of said deed, to wit, on November 4, 1901. It also appears from the evidence that Webb was never seen by the tenants of the building. They knew no one as being in charge thereof except the appellant, and it does not appear that Webb was ever about the property, or gave it any personal attention. The circumstances, therefore, make the fact of his residence in this state at least a doubtful one, and also show that, even though he may in fact have been a resident, yet he practically eluded a personal service of the summons.

The building was a large four-story frame structure, occupied by numerous tenants. The rotten and insecure condition of the railing which gave way cannot be doubted, and this was, also, accompanied by other similar dilapidated conditions about the premises. The evidence also shows that it was bought for speculative purposes, and this is given as a reason for the limited repairs. The child fell from an upper porch by reason of the insecure railing, and received serious injuries, which must be lifelong in effect, thus entailing upon her permanent suffering and inconvenience, through the neglect of some one. We make these observations at this time, not because the owner of the

property, under the theory of the complaint, was a necessary party, and not because it is material in this case whether the owner was in fact a resident or nonresident, but by way of argument, in order to show what we believe to be the wisdom of the rule declared by this court in its former decision—that any one under such circumstances as appear in this case, who is charged with a duty respecting the repair of property, shall not escape the consequences of his neglect, when serious harm to an innocent person has resulted therefrom. Particularly should this be so if the owner is a nonresident, or may so direct his whereabouts as to make the service of personal process upon him a difficult, if not an impossible, thing. It must always be remembered, however, that, in order to charge an agent, he must have authority to make repairs at the owner's expense, which places upon him the duty to do so. This was what was decided before, and its application to the facts of this case will be hereinafter examined.

It is assigned that the court erred in permitting testimony to be given as to certain repairs made by one Case and others, in the absence of a showing that the authority to make the repairs was vested in appellant by Webb, the owner. It is not disputed that Case and the others made the repairs by authority of appellant, and were paid therefor by appellant. It is also admitted that appellant was the owner's agent to the extent of renting the property and collecting the rents. The evidence was therefore proper as tending to show that appellant had, also, authority to repair, inasmuch as it had undertaken to make at least some repairs. It appeared that appellant collected and handled the rents, thus having in its possession funds of the owner which could have been applied upon repairs. The fact that repairs were made by authority of, and paid

for by, appellant was, therefore, proper to go before the jury as a circumstance connected with the conduct of the parties, coupled also with the fact that the owner at no time appeared to be personally present and directing as to repairs. Under the evidence complained of, there must have been some authority to repair, and whether that authority was general, or special and limited, was a fact for the jury to determine from the conduct of the parties and attending circumstances. It is not claimed by appellant that its authority as agent was created by writing. It was therefore competent to prove it by parol. In such case, the agency may be implied from the conduct of the parties, and both the fact and scope of the agency are for the jury, under proper instructions from the court. *London Sav. Fund Soc. v. Hagerstown*, 36 Pa. St. 498, 78 Am. Dec. 390. In the above case the court said: "And in all instances where the authority, whether general or special, is to be implied from the conduct of the principal, or where the medium of proof of agency is *per testes,* the jury are to judge of the credibility of witnesses and of the implications to be made from their testimony." See, also, *Nicoll v. Amer. Ins. Co.,* 3 Woodb. & M. (U. S.) 529, Fed. Cas. No. 10,259; *Dickinson County v. Mississippi Valley Ins. Co.,* 41 Ia. 286; *Nicholson v. Golden,* 27 Mo. App. 132; *Golding v. Merchant & Co.,* 43 Ala. 705; *Jacobson v. Poindexter,* 42 Ark. 97.

It is next assigned that the court erred in overruling the defendant's motion for nonsuit. It had already appeared that the aforesaid Case made, and caused to be made, repairs, under the direction of appellant. It was shown that Case himself connected the toilets to the sewer, nailed up the railing which broke, put a brace against a board in the alley, worked at tarring the roof, repaired the rear steps, nailed a board across the north stairway, and

fixed the windows.   Others, employed through and directed by Case, but paid by appellant, repaired the fence, built a bulkhead on the side of the house to prevent the earth in the alley, which was higher than the foundation of the house, from coming against the house, put boards in the walks around the house, put shores under the house, cleaned away the dirt which had fallen down from the house against the next property, and cleared away some evaporating works from the south side of the house.   There was also testimony that John Davis, the president of appellant company, was about the premises and gave immediate and peremptory orders concerning certain repairs, the necessity for which appeared to have then first come to his notice.   The directions were given in such a manner as to warrant the jury in concluding that he had authority to act upon his own judgment, and without consulting the owner as to such small details as the repairing and strengthening of a porch banister and railing.   It having been admitted that appellant was the owner's agent for at least some purposes, and it having appeared that all the repairs were made and paid for under the direction of appellant, the owner never being seen in connection therewith, it was for the jury to say, under the circumstances, whether appellant derived its authority from the owner to make the repairs it did make, and, if so, whether its authority was extended to as simple a matter as the repair of this railing, which was, in grade and character, similar to a number of other repairs that were made. , In *Wilcox v. Chicago etc. R. Co.,* 24 Minn. 269, the following instruction was requested and refused:

"In order to raise a presumption that a person is authorized to act for another, the acts and recognitions of acts relied upon as evidence of authority must be more than one act of the alleged agent, and one recognition of the

act by the principal. They must have been done often
enough to raise in the mind of a person of ordinary care
a presumption of authority given by the principal to the
alleged agent."

The supreme court, commenting upon the refused instruc-
tion, said:

"This request is bad; a single act of the agent and a
recognition of it by the principal may be so unequivocal
and of so positive and comprehensive a character, as to
place the authority of the agent to do similar acts for the
principal beyond any question. The value of such proof
does not depend so much on the number of acts as upon
their character."

Even if it be conceded that the rule as stated by the court
is too strong, we think it must, also, be conceded that the
requested instruction did comprehend the law, and the
frequent similar acts on the part of the agent in the case
at bar bring the case within the terms of said requested
instruction. The court did not err in denying the motion
for nonsuit.

It is urged that the court erred in its statement of the
issues to the jury, in that it referred to certain averments
of the complaint which, it is claimed, are not supported
by any evidence. It is appellant's position that the court
should either not have referred to such allegations of the
complaint, or should have told the jury that there was no
evidence upon the subject. Should the court have made
the latter statement to the jury, it might have subjected
itself to the criticism of commenting upon the evidence.
We see no error in stating the issues, as laid in the plead-
ings, when the jury are instructed that they must base
their findings entirely upon evidence. Such was made
sufficiently clear to the jury in this case. No other errors
are urged upon the instructions given, but assignments are
made upon the refusal to give several requested ones. We

think the instructions given fully and fairly cover the law of the case, and that no prejudicial error was committed in refusing the requested instructions.

The next claims of error, which are considered together, are that the court refused to instruct the jury to return a verdict for the defendant, and also that the motion for a new trial was overruled. This contention is based upon the claim that there was not sufficient evidence upon which to base the verdict. We have already referred to the evidence introduced prior to the motion for nonsuit, and which we have held sufficient for submission to the jury. The testimony in behalf of defendant was to the effect that it had no general authority to repair, and that the repairs which were made by it were made under special authority and direction. There was also testimony by officers of the defendant, and also by a Mr. Smith, an uncle of Webb, the owner, that no special instructions were given to repair the guard rail in question. Smith appears to have, in some manner, represented Webb in Seattle, and it is claimed that authority to repair came only through him. Webb, the owner, did not testify at the trial. As already stated, there were at least some repairs ordered by appellant, under circumstances which justified the jury in finding that they were ordered without waiting for special directions. The secretary of the company testified that appellant was authorized to keep the building clean and do the janitor work. Just what was comprehended in the janitor work was not stated, but the man Case, who made and oversaw so many of the small repairs, was the janitor, and these circumstances were such as we think justified the jury in concluding that such small repairs as the nailing and securing of this guard rail were included in the janitor's duties.

Mr. Davis, the president of appellant company, was asked the following question: "What power or authority

or direction from Webb, or any one representing Webb, did John Davis & Company have as to repairs to the property ?" to which he answered: "Well, they did not want to spend any more money than was absolutely necessary on it." From the above the jury could reasonably imply an authority to make no more repairs than were absolutely necessary, and it certainly appeals to any reasonable mind that the repair of this guard rail and banister was necessary for the safety of the occupants of the building, who paid rent with the expectation of enjoying reasonably safe premises. It is true, Mr. Davis afterwards testified, in answer to further questions, that his company had no authority to make repairs except such as were specifically directed, but the above was his answer to a plain and direct question, the first upon the subject, and was as much for the consideration of the jury as any of his other answers. The case was fairly submitted to the jury. They were not left to the realm of speculation for the verdict they returned, as suggested by appellant, but they had substantial evidence, as above outlined, and from said facts, the attending circumstances, and the conduct of the parties, they found that appellant had authority to make the repair in question. The evidence is such that we do not deem it our province to disturb that finding. Not only did the jury find the fact, but the trial court, who heard and saw the witnesses, also passed upon the sufficiency of the evidence by a denial of a new trial. With the fact of authority to repair established, the duty to do so arose within the former decision in this case. That duty having been neglected, it follows that the appellant is liable. The evidence upon other features necessary to establish liability is ample and unquestioned. The judgment is affirmed.

FULLERTON, C. J., and MOUNT, ANDERS, and DUNBAR, JJ., concur.