ENTERPRISE MINING COMPANY *v.* RICO–ASPEN CONSOLIDATED MINING COMPANY.

CERTIORARI TO THE COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 267. Argued April 7, 8, 1897. — Decided May 10, 1897.

The clear import of the language of Rev. Stat. § 2320 is to give to a tunnel owner, discovering a vein in the tunnel, a right to appropriate fifteen hundred feet in length in that vein; which right arises upon the discovery of the vein in the tunnel; dates by relation back to the time of the location of the tunnel site; may be exercised by locating the claim the full length of fifteen hundred feet on either side of the tunnel, or in such proportion thereof on either side as the locator may desire; and is not destroyed or impaired by the failure of the owner of the tunnel to adverse a previous application for a surface patent before the discovery of the vein.

THIS case involves the construction of Rev. Stat. § 2323, which reads as follows:

" Where a tunnel is run for the development of a vein or lode, or for the discovery of mines, the owners of such tunnel shall have the right of possession of all veins or lodes within 3000 feet from the face of such tunnel on the line thereof, not previously known to exist, discovered in such tunnel, to the same extent as if discovered from the surface; and locations on the line of such tunnel of veins or lodes not appearing on the surface, made by other parties after the commencement of the tunnel, and while the same is being prosecuted with reasonable diligence, shall be invalid; but failure to prosecute the work on the tunnel for six months shall be considered as an abandonment of the right to all undiscovered veins on the line of such tunnel."

The facts are these :

The Group tunnel site, under which the Enterprise Mining Company, the defendant and appellant, claims the right to the ores in controversy, was located on July 25, 1887, and the certificate of location was filed in the office of the county clerk and recorder of the county in which the location was made on August 29, 1887.

The Vestal lode mining claim, under which the plaintiffs, the appellees, claim title is based upon a discovery made on March 23, 1888. The claim was located on April 1, 1888, and the location certificate was filed for record on April 3, 1888.

The situation of the properties is sufficiently disclosed by the following diagram : .

The ore in controversy is within the limits of the tract A, B, C, D. As to this tract, the two locations, the Vestal and Jumbo No. 2, conflict. The owners of the Vestal claim made application in 1890 for a patent. No adverse proceed-

ings were instituted by the defendant, and a patent for the claim was issued on February 6, 1892. At the time of these proceedings no discovery of a vein in the tunnel had been made. But on June 15, 1892, a vein was discovered 1920 feet from its portal at the place marked "discovery" on the diagram. Immediately thereafter the defendant caused the boundaries of the claim Jumbo No. 2 to be located upon the surface of the earth, and a certificate of location to be duly recorded, in which it claimed 54 feet along the vein to the northeasterly of the tunnel and 1446 feet southwesterly. The position of this claim appears sufficiently on the diagram. The portion of this vein within the limits of the Vestal claim is about 750 feet from the line of the tunnel. This suit was commenced in the Circuit Court of the United States for the District of Colorado, on September 3, 1892, and was decided by that court in favor of the plaintiffs. 53 Fed. Rep. 321. On appeal to the Court of Appeals this decision was reversed, 32 U. S. App. 75, and the case remanded for further proceedings. Thereupon the case was brought here on a writ of certiorari.

*Mr. R. S. Morrison* for appellees. *Mr. Charles J. Hughes, Jr.,* and *Mr. Charles S. Thomas* were on his brief.

*Mr. Charles H. Toll* and *Mr. Joel F. Vaile* for appellant. *Mr. Henry M. Teller* and *Mr. Edward O. Wolcott* were on their brief.

Mr. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

It will be observed that so far as the mere location of the two claims, Vestal and Jumbo No. 2, the former was prior in time to the latter, and would, if there were no other facts, give priority of right to the ore within the limits of the conflicting territory. The tunnel was, however, located some eight or nine months before the discovery and location of the Vestal claim, and the statute gives to the owners of

such tunnel the right to "all veins or lodes within 3000 feet from the face of such tunnel on the line thereof, not previously known to exist." By virtue of this section, therefore, the right of the defendant to this vein was prior to that of the plaintiffs to the mineral in their claim. In this respect the Circuit Court and the Court of Appeals agreed. The matters now in dispute are the extent of that right and the effect of a failure to "adverse" the application for a patent.

The right to this vein discovered in the tunnel is by the statute declared to be "to the same extent as if discovered from the surface." If discovered from the surface, the discoverer might, under Rev. Stat. § 2320, claim "one thousand five hundred feet in length along the vein or lode." The clear import of the language then is to give to the tunnel owner, discovering a vein in the tunnel, a right to appropriate fifteen hundred feet in length of that vein. When must he indicate the particular fifteen hundred feet which he desires to claim? Counsel for plaintiffs contend that it should be done when in the first instance the tunnel is located, and that if no specification is then made the line of the tunnel is to be taken as dividing the extent of the claim to the vein, so that the tunnel owner would be entitled to only 750 feet on either side of the tunnel; while counsel for defendant insist that he need not do so until the actual discovery of the vein in the tunnel. We think the defendant's counsel are right. In order to make a location there must be a discovery; at least, that is the general rule laid down in the statute. Section 2320 provides: "But no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located." The discovery in the tunnel is like a discovery on the surface. Until one is made there is no right to locate a claim in respect to the vein, and the time to determine where and how it shall be located arises only upon the discovery — whether such discovery be made on the surface or in the tunnel. The case of *Erhardt* v. *Boaro*, 113 U. S. 527, is not in point, for there the preliminary notice, which was made upon a discovery from the surface, simply claimed "1500 feet on this mineral bearing lode," without further

specification as to boundaries, or direction. And it was held that that was equivalent to a claim for 750 feet in each direction from the discovery shaft.

It may be true, as counsel claim, that this construction of the statute gives the tunnel excavator some advantages. Surely it is not strange that Congress deemed it wise to offer some inducements for running a tunnel into the side of a mountain. At the same time it placed specific limitations on the rights which the tunnel owner could acquire. He could acquire no veins which had theretofore been discovered from the surface. His right reached only to blind veins, as they may be called, veins not known to exist, and not discovered from the surface before he commenced his tunnel. It required reasonable diligence in the prosecution of his work. It placed a limit in length, 3000 feet, beyond which he might not go in his search for veins and acquire any rights under his tunnel location, and the veins to which he might acquire any rights were those which the tunnel itself crossed. Such is the import of the letter, to which counsel refer, from Commissioner Drummond, of date September 20, 1872. Land Office Report, 1872, p. 60; 3 Copp's Land Owner, 130. It may be also noticed that in this letter the commissioner affirmed the right of location on either side of the tunnel, in these words: "When a lode is struck or discovered for the first time by running a tunnel, the tunnel owners have the option of recording their claim of fifteen hundred feet all on one side of the point of discovery or intersection, or partly on one and partly upon the other side thereof."

We hold, therefore, that the right to a vein discovered in the tunnel dates by relation back to the time of the location of the tunnel site, and also that the right of locating the claim to the vein arises upon its discovery in the tunnel, and may be exercised by locating that claim the full length of 1500 feet on either side of the tunnel, or in such proportion thereof on either side as the locator may desire.

It was well said by the Court of Appeals in its opinion in this case: "The striking characteristic of this section of the act is, that it gives the right to the possession of certain

veins or lodes to the diligent owner of a tunnel before his discovery or location to any lode or vein whatever, contingent only upon his subsequent discovery of such veins in his tunnel. Veins or lodes discovered on the surface or exposed by shafts from the surface must be found before any right to them vests (§§ 2, 5, acts of May 10, 1872; §§ 2320, 2324, Rev. Stat.); but this section declares that the owners of a tunnel by simply locating and diligently prosecuting it, without the discovery of any vein or lode whatever, 'shall have the right of possession of all veins or lodes within three thousand feet from the face of such tunnel on the line thereof, not previously known to exist, discovered in such tunnel, to the same extent as if discovered from the surface.'"

In *Hope Min. Co.* v. *Brown*, 11 Montana, 370, 383, the Supreme Court of that State observed: "But has he [the tunnel owner] not an inchoate right in such veins, which right is kept alive by prosecution of work on the tunnel, according to law? This seems to be implied by the last clause of the statute, that 'failure to prosecute the work on the tunnel for six months shall be considered as an abandonment of the right to all undiscovered veins on the line of the tunnel.' The fact that said non-action on the part of the tunnel claimant should constitute an abandonment shows that it was the intent of Congress to reserve such lodes from the commencement of the tunnel, while it was prosecuted according to law." See also *Back* v. *Sierra Nevada Con. Min. Co.*, 2 Idaho, 386.

The plaintiffs further contend that an act passed by the territorial legislature of Colorado in 1861, Sess. Laws Col. 1861, p. 166, Mills' Ann. Stats. § 3141, limits the right of the tunnel owner to veins discovered in the tunnel to 250 feet on each side of the tunnel. That section reads:

"Any person or persons engaged in working a tunnel, within the provisions of this chapter, shall be entitled to two hundred and fifty feet each way from said tunnel, on each lode so discovered."

But if that section has not been in terms repealed by the legislature of Colorado, it was superseded by the legislation of

Congress, as found in the Revised Statutes. *Ellet* v. *Campbell,* 18 Colorado, 510.

The remaining question is whether the failure to "adverse" the application for a patent for the Vestal claim destroyed or impaired the rights of the defendant. We think not. Sections 2325 and 2326, Revised Statutes, contain the legislation in reference to adverse claims. These provisions are substantially that when a party makes his application for a patent, if no adverse claim is filed within sixty days from publication of notice, it shall be assumed that the applicant is entitled to a patent; that when an adverse claim is filed, "it shall be upon oath of the person or persons making the same, and shall show the nature, boundaries and extent of such adverse claim, and all proceedings . . . shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived. It shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure so to do shall be a waiver of his adverse claim."

Now, at the time the application for patent to the Vestal claim was presented and the proceedings had thereon, the defendant knew of no vein which would enable it to dispute the right of the owners of the Vestal to a patent. The Vestal claim, it will be perceived, runs parallel to the line of the tunnel, and is distant therefrom some five hundred feet. The presumption, of course, would be that the vein ran lengthwise and not crosswise of the claim as located, and such a vein would not, unless it radically changed its course, cross the line of the tunnel. Whether it did or not, or whether any other vein should be found in the tunnel which should cross the territory of the Vestal, was a matter of pure speculation, and there would be no propriety in maintaining a suit to establish defendant's inchoate right and delay the Vestal claimants in securing a patent on a mere possibility which might never ripen into a fact. The obvious contemplation of the

law in respect to these adverse proceedings is that there shall be a present, tangible and certain right, and not a mere possibility. Of course, the owners of the Vestal claim had notice, from the fact of the location of the tunnel line, of the possibilities which future excavations of the tunnel might develop, and so they were not prejudiced by the failure to " adverse." And as the defendant could not, in any suit which it might institute, establish a certain adverse right, and as litigation in the courts is based upon facts and not upon possibilities, it seems to us that nothing was to be gained by instituting adverse proceedings, and, therefore, nothing lost by a failure so to do.

These are all the questions in the case. We are of opinion that the decision of the Court of Appeals is right, and it is

*Affirmed.*