## CAMPBELL *v.* ELLET.

ERROR TO THE SUPREME COURT OF THE STATE OF COLORADO.

No. 44. Submitted May 4, 1896. — Decided May 10, 1897.

*Enterprise Mining Co.* v. *Rico-Aspen Mining Co.*, 167 U. S. 108, affirmed and applied, and the court further decides that the failure of the tunnel owner to mark on the surface of the ground the point of discovery and the boundaries of the tract claimed does not destroy his right to the veins he discovers in the tunnel.

On September 18, 1872, George C. Corning and other citizens of the United States located a tunnel site. They diligently prosecuted the work of excavation, expending therein one hundred thousand dollars.

On February 3, 1875, the Corning Tunnel Company, a corporation duly organized, was the owner of this tunnel location by sundry mesne conveyances from the locators thereof, and said tunnel company, while prosecuting the work of excavation, cut and discovered within the tunnel and upon the line thereof, at a distance of 594 feet from its face, a vein of mineral-bearing rock in place, which was named the Bonanza lode, and on said February 3 it posted at the face

of the tunnel a plain sign and notice, giving the name of said vein, the point of discovery within the tunnel, the general course of the vein from the point of discovery, and claiming 750 feet of said vein on each side of the line of the tunnel; this Bonanza lode did not appear upon the surface of the ground, and was not known to exist prior to its discovery by the Corning Tunnel Company, as above stated.

On February 9, 1875, the tunnel company filed and caused to be recorded in the office of the clerk and recorder of the county of Boulder a location certificate of said Bonanza lode, giving the name of the lode so discovered and the company as the locator thereof, the point in the line of the tunnel at which the lode was discovered, and claiming seven hundred and fifty feet of the vein upon each side thereof; also stating the general course of the vein. The location certificate was as follows:

"Territory of Colorado, }
County of Boulder. }

"Know all men by these presents that we, the Corning Tunnel Company, claim, by right of discovery and by right of location, 1500 feet, linear and horizontal measurement, on the Bonanza lode, along the vein thereof, with all its dips, variations and angles, together with the amount of surface necessary for working the same and allowed by law, 750 feet of said lode so located lying and being easterly of the discovery on said lode and 750 feet being westerly of said discovery, said load being more particularly described as follows, to wit: Beginning at a point in the Corning tunnel 594 feet from the face of said tunnel and extending from said point 750 feet easterly and 750 feet westerly. The bearing of said lode is about north 78 degrees east. This lode was discovered in the Corning tunnel and it is claimed under the provisions of section 4 of an act of Congress approved May 10, 1872, in Gold Hill mining district; said lode was discovered and was located on the 3d day of February, A.D. 1875.

"(Signed)　　　Frederick A. Squires, *Pres.*

"Daniel A. Robinson, *Sec'y.*"

Subsequently the title to the tunnel and the lode passed to the defendant in error. After the discovery of said Bonanza lode the owners of the tunnel continuously and diligently prosecuted the work on the lode and expended each year thereon the sum of one hundred dollars. On July 10, 1886, more than eleven years after the discovery of the Bonanza lode, the plaintiff in error, Campbell, and one Cyrus Taylor, with full knowledge of the tunnel claim, and of the discovery and location of the Bonanza lode aforesaid, made a location of a certain lode, called by them the J. L. Sanderson lode. This location is on the same lode and vein as that described in the Bonanza location, and the discovery cut by which it was discovered by Campbell and Taylor is within 200 feet of the tunnel line. Campbell and Taylor did everything required to be done by the statutes of the United States in discovering and marking the point of discovery of the Sanderson lode, and in marking the boundaries of the claim on the surface of the ground, and thereafter did the requisite annual labor thereon. Having made application for a patent the defendant in error filed an adverse claim and commenced a suit, as required by the statute. Rev. Stat. § 2326. This, after a trial in the District Court of Boulder County, Colorado, was taken to the Supreme Court of the State, and by that court a judgment was entered in favor of the defendant in error, on the ground that the proceedings in respect to the tunnel, the discovery of the Bonanza lode and the location thereof, vested in him a title to that lode to the distance of 750 feet from the line of the tunnel. 18 Colorado, 510. To reverse which judgment Campbell sued out this writ of error.

*Mr. L. C. Rockwell* for plaintiff in error.

*Mr. Platt Rogers* and *Mr. John F. Shafroth* for defendant in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

In the case just decided of *Enterprise Mining Co.* v. *Rico-*

*Aspen Consolidated Mining Co., ante,* 108, we have considered the law in respect to mining tunnels. Beyond what was there disposed of only a single question requires consideration, and that is, does the failure to mark on the surface of the ground the point of discovery and the boundaries of the tract claimed destroy the right of the tunnel owner to the veins he has discovered in the tunnel?

It will be noticed that the tunnel company posted at the mouth of the tunnel a notice of its discovery of this lode, and the extent of its claim thereon, and also that it caused to be filed in the office of the recorder of the county a location certificate, as required by the local statute. Mills Ann. Stats. §§ 3150, 3151. It will also be perceived that § 2323, Rev. Stat., gives to the tunnel discoverer the right of possession of the veins. It in terms prescribes no conditions other than discovery. The words "to the same extent" obviously refer to the length along the line of the lode or vein. Such is the natural and ordinary meaning of the words, and there is nothing in the context or in the circumstances to justify a broader and different meaning. Indeed, the conditions surrounding a vein or lode discovered in a tunnel are such as to make against the idea or necessity of a surface location. We do not mean to say that there is any impropriety in such a location, the locator marking the point of discovery on the surface at the summit of a line drawn perpendicularly from the place of discovery in the tunnel, and about that point locating the lines of his claim in accordance with other provisions of the statute. It may be true, as suggested in Morrison's Mining Rights, 8th edition, page 182, that before a patent can be secured there must be a surface location. Rev. Stat. § 2325. But the patent is not simply a grant of the vein, for, as stated in the section, "a patent for any land claimed and located for valuable deposits may be obtained in the following manner." It must also be noticed that § 2322, in respect to locators, gives them the exclusive right of possession and enjoyment of all the surface within the lines of their locations, and all veins, lodes and ledges, the tops or apexes of which are inside such lines. So that a location gives to the locator something more

than the right to the vein which is the occasion of the location. But without determining what would be the rights acquired under a surface location based upon a discovery in a tunnel, it is enough to hold, following the plain language of the statute, that the discovery of the vein in the tunnel, worked according to the provisions of the statute, gives a right to the possession of the vein to the same length as if discovered from the surface, and that a location on the surface is not essential to a continuance of that right. We do not mean to hold that such right of possession can be maintained without compliance with the provisions of the local statutes in reference to the record of the claim, or without posting in some suitable place, conveniently near to the place of discovery, a proper notice of the extent of the claim — in other words, without any practical location. For in this case notice was posted at the mouth of the tunnel, and no more suitable place can be suggested, and a proper notice was put on record in the office named in the statute.

We are of opinion, therefore, that the question considered must be answered in the negative. There is no error in the judgment of the Supreme Court of Colorado, and it is

*Affirmed.*