BUTTE CONSOLIDATED MINING COMPANY, Respondent,
*v.* BARKER, Jr., Appellant.

(No. 2,392.)

(Submitted March 14, 1907.   Decided March 21, 1907.)

(89 Pac. 302.)

*Mines—Adverse   Suits—Location—Declaratory   Statements— Development  Work—Evidence—Order of Proof—Equity.*

Mines—Adverse Suits—Location—Development Work—Insufficiency.

1. In an adverse suit to a quartz lode mining claim it appeared that defendant had posted his notice of location on the surface of the claim and marked the boundaries, but that the only development was a crosscut, made at a depth of one hundred and thirty-two feet from the surface, running from a shaft on an adjoining patented claim. The only means of reaching the crosscut was down this shaft. He testified that he made discovery in the crosscut, but whether he had done or caused to be done any development work himself was not made apparent. *Held,* that the showing made did not meet the requirements of sections 3611 and 3612 of the Political Code, relative to the development work which the locator must do on the claim in order to manifest his intention to claim the ground embraced within his boundaries in good faith, and that therefore his declaratory statement was properly excluded from evidence.

Same—Location—Statutory Requirements—Power of Legislature.

2. The legislature may, in addition to the acts required by the federal statutes, rightfully exact of the locator of a quartz lode mining claim the doing of the necessary development work, prescribed in section 3611 of the Political Code, and the filing for record of the declaratory statement, which must contain, *inter alia,* the dimensions and location of the discovery shaft, or its equivalent, sunk upon the claim. (See, also, opinion on rehearing, *post,* p. 339.)

Same—Location—Development Work—Where to be Made.

3. The only way the locator of a quartz lode mining claim can manifest his intention to claim the ground embraced within his bbundaries,

in good faith under the mining laws, is by means either of a discovery shaft or a crosscut sunk or made from an opening *upon the claim* sought to be located, and not upon ground over which he has not complete control as a matter of right, or from which he may be excluded at any time at the option of another.     (See, also, opinion on rehearing, *post*, p. 339.)

Same—Declaratory Statement—Evidence—Order of Proof.

4.   Where, in an adverse suit to a mining claim, the court permitted a declaratory statement to be introduced in evidence before any testimony had been given showing the necessary steps to be taken before the statement could be filed for record, had in fact been taken by the locator of the claim, and subsequently such necessary proof was made, its action in admitting the statement out of its order was without prejudice.

Trial—Order of Proof—District Courts—Discretion.

5.   The order in which proof may be admitted is a matter largely in the discretion of the trial court, subject to review only for abuse of such discretion.

Mines—Declaratory Statements—Amendments—Relate Back to Originals.

6.   An amended declaratory statement, the purpose of which is to cure defects in the original, and so to put the locator, in the absence of any intervening rights, in the same position he would have occupied had no such defects occurred (Laws 1901, p. 56), relates back to the date of the original location, by virtue of the locator's discovery, his prior possession, the posting of the notice, the marking of the boundaries, the doing of the necessary development work, and the attempted compliance with the law relating to the filing of the declaratory statement for record.

Same—Evidence—Amended Declaratory Statements—Complaint—Amendment—After Commencement of Trial.

7.   In view of the fact that an amended declaratory statement is not evidence of any newly acquired right, but relates back to a right initiated prior to its filing, and the further fact that defendant in an adverse suit to a mining claim was, by a ruling of the district court excluding his evidence, declared not to have any right in the ground in controversy for failure to show that he had done or caused to be done the necessary development work, the admissibility in evidence of such a statement was not affected by the fact that it was filed after the trial had commenced; nor was it error to permit plaintiff to amend its complaint to show its filing.

Same—Declaratory Statement—Amendment in Name.

8.   The name given to a quartz lode mining claim in the original declaratory statement was "Annex."   Subsequently, and after the trial in an adverse suit to the claim had commenced, an amended statement was permitted to be filed, the amendment consisting in the addition of the word "Plumber" to the first name.   The ground embraced in both was the same, and the amended statement specifically declared that it was intended as an amendment of the "Annex" statement.   *Held,* that the affixing of the word "Plumber" to the name originally given to the claim did not invalidate the amended statement, since the ground embraced in, and not the name of, the claim is the factor in such controversies, and no one could have been deceived by the change of name.

Mines—Adverse Suits—Equity—Jury Trial.

9.   An adverse suit to a mining claim is, in effect, a suit in equity in which the parties are not, as a matter of right, entitled to a trial

by jury, and, therefore, error may not be predicated upon the action of the trial court, after it had ordered all evidence offered by defendant stricken out, in discharging the jury and making findings of fact and conclusions of law in favor of plaintiff.

*Appeal from District Court, Silver Bow County; Jno. B. Mc-Clernan, Judge.*

SUIT by the Butte Consolidated Mining Company against Samuel Barker, Jr., in support of an adverse to a mining claim. From a judgment for plaintiff and an order denying him a new trial, defendant appeals. Judgment and order affirmed.

. *Messrs. Forbis & Evans,* for Appellant.

Citing on the question of the sufficiency of the location notices of the Annex and Plumber locations: *Fleming* v. *Daly,* 12 Colo. App. 439, 55 Pac. 946-949; *Beale* v. *Cone,* 27 Colo. 473, 83 Am. St. Rep. 92, 62 Pac. 948-959; *Terrible Min. Co.* v. *Argentine Min. Co.,* 89 Fed. 583; *Cheeseman* v. *Shrieve,* 40 Fed. 787; *Copper Globe M. Co.* v. *Allman,* 23 Utah, 410, 64 Pac. 1019; *Fox* v. *Meyers* (Nev.), 86 Pac. 793; *Purdum* v. *Laddin,* 23 Mont. 387, 59 Pac. 153; *Baker* v. *Butte City Water Co.,* 28 Mont. 222, 104 Am. St. Rep. 683, 72 Pac. 617; S. C., 196 U. S. 119, 25 Sup. Ct. 211, 49 L. Ed. 409; *Mares* v. *Dillon,* 30 Mont. 117, 75 Pac. 963; *Dolan* v. *Passmore* (Mont.), 85 Pac. 1034; *Helena Gold etc. Co.* v. *Baggaley* (Mont.), 87 Pac. 456; *Hahn* v. *James,* 29 Mont. 1, 73 Pac. 965; *Wilson* v. *Freeman,* 29 Mont. 470, 75 Pac. 84.

This suit is a controversy between the Annex location, to sustain which an adverse was filed, and the Louise location, under which the application for patent was made. No adverse was filed on behalf of the Plumber or the Annex-Plumber, and consequently these locations are neither of any avail in this or any other action. The Plumber, being in existence when the application for patent was made and having failed to file an adverse, stands as waived and abandoned. The second, the Annex-Plumber, having no existence at the time or during the application for patent, cannot be heard in this action to claim

an existence. (*Murray* v. *Polglase*, 23 Mont. 401, 59 Pac. 439; *Hopkins* v. *Butte Copper Co.*, 29 Mont. 390, 74 Pac. 1081; *Helena Gold etc. Co.* v. *Baggaley, supra; Lavagnino* v. *Uhlig*, 198 U. S. 443, 29 Sup. Ct. 716, 49 L. Ed. 1119; *Gwillim* v. *Donnellan*, 115 U. S. 45, 5 Sup. Ct. 1110, 29 L. Ed. 348; *Healey* v. *Rupp* (Colo.), 86 Pac. 1015.)

*Mr. John J. McHatton,* for Respondent.

The Annex-Plumber declaratory statement was properly admitted in evidence. If, as we contend, the location of the ground was sufficiently established, its admission in evidence would be harmless error. If, as claimed by the appellant, there was any imperfection in either of the declaratory statements filed on behalf of the respondent before this time, it was admissible in evidence. The appellant failed to establish any intervening right. It therefore cannot be heard to say that it was necessary to plead the amended declaratory statement, or that any error was committed in its submission. It is conceded that the amended declaratory statement in all respects was sufficient upon its face. That the appellant cannot complain, see *McKay* v. *McDougal*, 25 Mont. 258-262, 87 Am. St. Rep. 395, 64 Pac. 669; Laws 1901, p. 56; Cooley's Constitutional Limitations, p. 457; Endlich on Interpretation of Statutes, sec. 282; *Bullard* v. *Smith*, 28 Mont. 387, 72 Pac. 761.

As to the purpose and effect of the amended declaratory statement, see *Jordan* v. *Schuerman*, 6 Ariz. 79, 53 Pac. 579; *Morrison* v. *Reagan*, 8 Idaho, 291, 67 Pac. 955; *Frisholm* v. *Fitzgerald*, 25 Colo. 290, 53 Pac. 1109; *Tonopah & S. L. M. Co.* v. *Tonopah M. Co.*, 125 Fed. 389; Snyder on Mines, sec. 431; Lindley on Mines, 2d ed. pp. 718, 719, sec. 397; *Wilson* v. *Freeman*, 29 Mont. 470, 75 Pac. 84. See, also, *Strepy* v. *Stark*, 7 Colo. 614, 5 Pac. 111; *McEvoy* v. *Hyman*, 25 Fed. 600; Lindley on Mines, 2d ed., sec. 398; *Vanzant* v. *Argentine Min. Co.*, 8 Fed. 725, 2 McCrary, 159. Where the object is simply to correct imperfection and obvious defects, and there is no attempt to include new ground, the amended certificate has been held to date back to the original,

in spite of intervening rights.    (Lindley on Mines, 2d ed., sec. 398, p. 719; *Craig* v. *Thompson,* 10 Colo. 517, 16 Pac. 24; *Frisholm* v. *Fitzgerald,* 25 Colo. 290, 53 Pac. 1109; *Jordan* v. *Scheurman,* 6 Ariz. 79, 53 Pac. 579; *Morrison* v. *Reagan,* 8 Idaho, 291, 67 Pac. 955; *Shreve* v. *Copper Bell Min. Co.,* 11 Mont. 309, 28 Pac. 315; *Largey* v. *Bartlett,* 18 Mont. 265, 44 Pac. 962; *Wetzstein* v. *Largey,* 27 Mont. 212, 70 Pac. 717.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1900 Samuel Barker, Jr., made application to the United States land office at Helena for a patent to the Louise lode mining claim.    Within the sixty-day period of publication, the Butte Consolidated Mining Company filed its adverse, claiming a portion of the ground embraced within the Louise claim by virtue of its location of the Annex lode mining claim.    The adverse claim was allowed, and this action was brought within thirty days thereafter,    The complaint is in the usual form of an action to quiet title.

The answer puts in issue the allegations touching the validity of the Annex location and the invalidity of the Louise location, and by way of affirmative defense sets forth the facts touching the location of the Louise claim, and prays that the defendant's title be quieted to the ground in controversy.    The affirmative allegations are put in issue by reply.

Upon the trial the plaintiff offered in evidence the declaratory statement of the Annex claim, to which objection was made, but the objection was overruled.    Defendant offered testimony in his own behalf, which tended to show that he made discovery of mineral-bearing rock in place at the end of a crosscut, one hundred and two feet in length, which crosscut extended from a shaft on the Bully Boy claim into the territory embraced within the boundaries of the Louise claim.    This testimony further tended to show the posting of a notice of location on the surface immediately over the point of discovery, the marking of the boundaries of the Louise claim, and the filing for record

of a declaratory statement. Defendant thereupon offered in evidence his declaratory statement, but, upon objection, it was excluded, and then, on- motion of counsel for plaintiff, all of defendant's testimony was stricken out. The court permitted the plaintiff to file an amendment to its complaint showing the filing of an amended declaratory statement for the same ground as the Annex, but designated "Amended Declaratory Statement of the Annex-Plumber Lode Mining Claim," and to reopen its case and to introduce in evidence such declaratory statement, and also the declaratory statement of the Plumber lode mining claim. The court discharged the jury and made findings of fact and conclusions of law in favor of the plaintiff, and rendered a decree adjudging it to be entitled to a patent for the ground in controversy. From this decree, and an order denying him a new trial, the defendant appeals.

1. As we view this matter, the principal question in controversy is presented by the ruling of the trial court in excluding from evidence the declaratory statement of the Louise claim, and we content ourselves with a consideration of only one of the grounds of objection urged by counsel for plaintiff to the admission of that declaratory statement, namely, that, when offered in evidence, the testimony of defendant himself showed that the only development work on the Louise claim was a crosscut one hundred and two feet in length, at a depth of one hundred and thirty-two feet from the surface extending northerly from No. 4 shaft, which is located on a patented mining claim, the Bully Boy claim, survey No. 1184.

From all that appears from defendant's testimony, he did not do or cause to be done any development work whatever. He was the locator of the Louise claim, but he merely states that he made discovery in the crosscut which is run from the one hundred and thrity-two foot level of shaft No. 4. From all that appears, that crosscut may have been there for years and made by an entire stranger; but, aside from this objection, which was not specifically urged, we think the ground stated above sufficient justification for the court's ruling.

In order to make a valid quartz lode mining location, our Political Code, sections 3610, 3611 and 3612 (the amendments made by an Act of the seventh legislative assembly, approved March 15, 1901 [Sess. Laws, 1901, p. 140], did not become effective until after these rights attached) requires (1) the discovery of a vein or lode; (2) the posting of a notice of location at the point of discovery containing the matters designated by section 3610; (3) the marking of the boundaries on the ground, and the doing of certain development work, designated in section 3611; and (4) the filing for record of a declaratory statement containing the matters mentioned in section 3612. Assuming that requirements 1 and 2 were fully met, we come to a consideration of the provisions of section 3611, with respect to the development work which must be done. That section provides that the locator must sink a discovery shaft upon the lode or claim to the depth of at least ten feet, or deeper if necessary to show a well-defined crevice or valuable deposit. It is declared that a crosscut which cuts the lode at the depth of ten feet below the surface is equivalent to a discovery shaft. Section 3612 provides for filing for record a declaratory statement, which, among other things, must state the dimensions and location of the discovery shaft, or its equivalent, sunk upon the claim. The doing of this development work and the filing for record of the declaratory statement are purely statutory requirements which the state may rightfully exact in addition to the acts required by the federal statutes. (*Baker* v. *Butte City Water Co.*, 28 Mont. 222, 104 Am. St. Rep. 683, 72 Pac. 617, affirmed in 196 U. S. 119, 25 Sup. Ct. 211, 49 L. Ed. 409.) In making these exactions the Legislature must have had some purpose in view. It was the common experience of miners that the notice of location posted upon the claim would most likely soon become destroyed, and therefore, in order that a permanent record of the locator's claim might be available to anyone interested, the provision for recording the declaratory statement was adopted. That declaratory statement is made to contain every fact necessary to

enable an interested party to locate the claim and ascertain its boundaries.

The requirements that a shaft be sunk upon the claim ten feet deep, or deeper if necessary to disclose a well-defined crevice or valuable deposit, or the doing of the work which is declared to be the equivalent, has a double purpose in view: "(1) To demonstrate to a reasonable degree of certainty that the deposit sought to be located as a lode is in fact a vein of quartz or other rock in place; (2) to compel the discoverer to manifest his intention to claim the ground in good faith under the mining laws." (Lindley on Mines, sec. 344.) That this development work must be done upon the claim admits of no doubt. Section 3611 so declares, and subdivision 6 of section 3612 clearly contemplates the same thing; and such work would not serve either purpose if done off of the particular claim.

Does the locator, then, manifest his intention to claim the ground within the defined boundaries of his claim, by making a crosscut which intersects or cuts the vein one hundred and thirty-two feet below the surface, when the only means of reaching such crosscut is down a shaft which is located upon another claim? If such is the fact, it must be conceded, then, that the shaft is not required to be upon an adjoining claim, but may be anywhere, so long as the locator is able to extend his crosscut to his own claim. In other words, there need not be any visible evidence of any development work on the claim whatever, and the locator, by posting his notice of location and marking the boundaries of this claim, may hold the same against all the world, if by some secret means of ingress beneath the surface he has actually performed an amount of work the equivalent of a discovery shaft. That such work does not meet the requirements of the statute seems altogether plain. It is by means of the discovery shaft or the crosscut that the locator manifests his intention. If he chooses to make such manifestation by means of a discovery shaft, he must do the work on the claim. The shaft must be sunk upon the claim, for so the statute declares; and this is done in order that anyone interested

may see the evidence of his good faith.  And for the like reason, if he makes manifest his intention by means of a crosscut, it must be from an opening upon the claim; otherwise, the owner of the claim upon which such opening is situated may rightfully refuse admission to such crosscut to any and every one except only the locator; and, if the locator has only a license to use such opening, he may at any time deny admission to the locator himself.  It cannot be that the requirements of the law are met by doing work over which the locator himself has no control, as a matter of right, and from which he may be excluded at any time by an entire stranger.

In the present case, so far as the claim initiated by Barker is concerned, there were not any indications upon the surface of that claim that he had done anything beyond posting a notice of location and marking the boundaries of the claim, and it does not aid him to say that his declaratory statement describes the crosscut as starting from a shaft, the location of which may be gained from the courses and distances given. Any inspection of such crosscut involves a trespass upon a patented claim, the property of a third person.  While we have not found any case directly in point, the charge given by Judge Hallet, in *Zollars* v. *Evans* (C. C.), 5 Fed. 172, 2 McCrary, 39, is instructive upon this subject.

Holding, as we do, that the crosscut from No. 4 shaft, even if made by Barker, does not meet the requirements of our statute for development work done on the Louise claim, it follows that the location of that claim was never completed, and whatever rights Barker initiated were lost, and therefore, not having a valid location of the Louise claim, his declaratory statement was irrelevant and immaterial, and that and his other evidence properly excluded.

2. Complaint is made that the court erred in admitting in evidence the original declaratory statement of the Annex claim, and also the amended declaratory statement of the Annex-Plumber claim, and with it the declaratory statement of the Plumber claim.  The Plumber claim is identical with the Annex,

and was located subsequently to the Annex. The amended declaratory statement of the Annex-Plumber was made after this case came on for trial, and the court permitted the plaintiff to amend its complaint and to introduce the Plumber declaratory statement and the amended Annex-Plumber declaratory statement in evidence. We think there was no error in the court's ruling. The Annex declaratory statement was introduced in evidence before any testimony had been given, showing that the steps necessary to be taken before a declaratory statement could be filed for record had in fact been taken by the locator of that claim. But this was a matter of the order of proof, which is lodged very largely in the discretion of the trial court, subject to review only for an abuse of such discretion, and, as it was followed by the necessary proof, we deem the ruling of the court without prejudice.

We may assume that the description of the discovery shaft contained in the Annex declaratory statement is so indefinite as to render that instrument defective, and, further, that the Plumber declaratory statement is of no effect whatever. Still the amended declaratory statement of the Annex-Plumber claim is sufficient, and, despite the fact that it assumes to fulfill the office of an amendment to the Plumber, it is equally valid as an amended declaratory statement of the Annex claim, and, in the absence of any intervening rights, relates back to the date of discovery of the Annex, March 4, 1900; that is to say, it relates back to a right accruing to the plaintiff and its predecessor in interest, the locator of the Annex, by virtue of the prerequisite acts of discovery, prior possession, posting the notice of location, marking the boundaries, doing the necessary development work, and the attempted compliance with the law relating to filing for record of a declaratory statement. (*Morrison* v. *Regan,* 8 Idaho, 291, 67 Pac. 955.)

The declaratory statement of the Annex, even though defective, was admissible in evidence in connection with the amended declaratory statement, first, as showing an attempt on the

part of the locator to comply with the law, and, second, for the purpose of showing the identity of the ground described in the two statements. (*Strepey v. Stark,* 7 Colo. 614, 5 Pac. 111.) The purpose and office of an amended declaratory statement is to cure defects in the original, and thereby put the locator, in case of no intervening rights, in the same position he would have occupied had no such defects occurred. (Sess. Laws, 1901, p. 56; 1 Lindley on Mines, sec. 398; *Duncan v. Fulton,* 15 Colo. App. 140, 61 Pac. 244; *Morrison* v. *Regan,* above.)  Such amended declaratory statement is not evidence of any newly acquired right, but is merely evidence of a right initiated prior to its filing; and, in view of these facts, and the further fact that, by the ruling of the court in excluding defendant's evidence, he had been declared to have no right to the property in controversy, we do not think the admissibility in evidence of the amended Annex-Plumber declaratory statement was affected at all by the fact that it was filed after the trial of the suit had been commenced; and for the same reason, there does not appear to have been any error committed in permitting plaintiff to amend its complaint to show the filing of such amended declaratory statement. (*Strepey* v. *Stark,* above.)

Neither do we think it of any consequence that the name given for the lode claim in the amended declaratory statement is "Annex-Plumber." The claim is identical with the Annex. It is in fact the same claim. The amended declaratory statement refers to the Annex location, and declares on its face that it is intended as an amended declaratory statement of the Annex claim. The ground and not the name of the claim, is the factor in these controversies. In 1 Lindley on Mines, section 398, it is said: "Where the second, or amended, notice contains names other than those set forth in the original, in an action against strangers this fact cannot be taken advantage of. It may be treated as an original notice as to the persons whose names do not appear on the first, and as a supplemental or amended notice as to those whose names appear on both.

Any radical change of the name of a claim might be construed as an attempt to hide its identity, and mislead adverse claimants in patent proceedings; but the mere dropping of a descriptive prefix—as, for instance, naming a claim the 'Tiger' instead of the 'Little Tiger,' 'Shields' in place of 'General Shields,' or 'Flag' instead of 'American Flag'—where the other descriptive portions of the notice are regular, is of no importance.'' For the same reason the mere addition of the word ''Plumber'' to the name given in the original Annex declaratory statement would appear to be of no consequence, since the amended declaratory statement specifically refers to the Annex claim, and no one could be deceived by the change of name.

We think there is a clear distinction between this case and the case of *Healey* v. *Rupp* (Colo.), 86 Pac. 1015. In the *Rupp Case* there was not any attempt to show a discovery under the original declaratory statement of the Canestota claim, but the plaintiff relied entirely upon a discovery made after the adverse proceedings had been instituted, while in the present case evidence was offered showing the discovery made on the Annex on March 4, 1900, the posting of the notice, marking of the boundaries, the doing of sufficient development work, and in fact apparently everything necessary to make a complete location of the Annex was done, except only that the declaratory statement failed to sufficiently describe the discovery shaft with the openings from it.

3. At the conclusion of the testimony, and after the court had stricken out all evidence offered on behalf of the defendant, on motion of counsel for plaintiff the jury was discharged, and the court made findings of fact and conclusions of law in favor of the plaintiff. The action of the court in discharging the jury without requiring a verdict to be returned is assigned as error by the defendant; but on the authority of *Mares* v. *Dillon,* 30 Mont. 117, 75 Pac. 963, *Kirby* v. *Higgins,,* 33 Mont. 518, 85 Pac. 275, and *Thornton* v. *Kaufman,* 35 Mont. 181, 88 Pac. 796,

we hold that this action is, in effect, a suit in equity, and that defendant was not, as matter of right, entitled to a jury trial.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

Rehearing granted April 20, 1907, on the question whether discovery can be made on the public domain, where access thereto can only be had through underground openings on patented ground.

### ON REHEARING.

(Submitted May 25, 1907.   Decided June 8, 1907.)

*Messrs. Forbis & Evans,* for Appellant.

Can a discovery of a quartz vein be made on public domain where access thereto can only be had through the underground openings on or through patented ground? We submit that the question of accessibility is not the test. No one has a right to access, whether the ways to the discovery are direct or tortuous, or whether they be upon one man's ground or another's, or wholly upon the claim located. Inaccessibility is unimportant and is not proscribed by the statute, nor is there any reason, we think, why accessibility should be held necessary for any reason or upon any ground. An admittedly good discovery cannot be invalidated because there may be no sufficient means for inspecting the point of discovery.

That the congressional law actually and positively authorizes the location of claims by inaccessible underground discoveries is evidenced by the provision of statute authorizing tunnel locations. The tunnel location in the first instance gives no property right, but only the right to prospect for a distance of three thousand feet from the mouth of the tunnel. When a vein shall be discovered in the tunnel it must be appropriated as any other vein. When so appropriated by location it may or it may not include the mouth of the tunnel. In other words,

the locator may have no rights by virtue of his location through the tunnel to the point of discovery.

In tunnel locations veins which show on the surface cannot be located. It is only the hidden and unknown veins which may thus be appropriated. It is not contemplated that there shall be anything at all on the surface either as to development work or croppings. The discovery in the tunnel is the only requisite in such locations, so far as the discovery of a vein is concerned. (*Enterprise Min. Co.* v. *Rico-Aspen Con. Min. Co.*, 167 U. S. 108, 17 Sup. Ct. 762, 42 L. Ed. 96; *Campbell* v. *Ellet*, 167 U. S. 116, 17 Sup. Ct. 765, 42 L. Ed. 101.) In the last case the point was raised and discussed as to what surface development should be made, and whether it was necessary to post a notice on the surface over the point of discovery. The supreme court held that a notice posted at the mouth of the tunnel was sufficient. The vein in this case was five hundred and ninety-four feet from the mouth of the tunnel. It was therefore probable that the mouth of the tunnel could not be on the claim as located.

Aside from the decisions cited above, the supreme court of Colorado, in *Brewster* v. *Shoemaker*, 28 Colo. 176, 89 Am. St. Rep. 188, 63 Pac. 309, has arrived at a different conclusion from this court. There a tunnel was run from a patented claim, and a vein struck in the tunnel was located pretty much as was done in this case, and the location was sustained. We call the court's attention to the fact that the state statute in Colorado is the same as ours. In fact our statute was taken from Colorado.

We submit that the state statute is nowhere violated by the defendant's location, but that the question raised is one solely arising under the United States statutes, and that our statute does not, and does not undertake to, regulate the question.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

We adhere to the decision heretofore reached in this case (ante, p. 327, 89 Pac. 302). Our decision is based upon a consid-

eration of sections 3611 and 3612 of our Political Code, and not upon a consideration of any federal statute. We further hold to the view expressed, that the state may rightly exact of a locator certain things enumerated in our Code, in addition to what is required by the laws of the United States, for making a quartz lode mining location. And, while it may be said that our Code does not in express terms declare that the opening of the cut, crosscut or tunnel, which is designated the equivalent of the discovery shaft by section 3611 above, must be on the claim sought to be located, we do think that no other conclusion can be drawn from the language employed in that section and section 3612.

The cases cited by appellant (*Enterprise Min. Co.* v. *Rico-Aspen Con. Min. Co.,* 167 U. S. 108, 17 Sup. Ct. 762, 42 L. Ed. 96, and *Campbell* v. *Ellet,* 167 U. S. 116, 17 Sup. Ct. 765, 42 L. Ed. 101) have to do with locations made pursaunt to section 2323 of the United States Revised Statutes, which are governed by different principles from those applicable to other locations, such as the attempted location of the Louise claim. That different principles are applicable to these different classes of claims, we think is made manifest in *Campbell* v. *Ellet,* above, wherein it is decided directly, for instance, that it is not necessary to mark the point of discovery or the boundaries of the claim on the surface, in case of a location made under section 2323, above, while section 2324, which applies to all other lode mining claims, particularly requires that "the location must be distinctly marked on the ground, so that its boundaries can be readily traced."

The question which we have decided was not one of the questions determined in *Brewster* v. *Shoemaker,* 28 Colo. 176, 89 Am. St. Rep. 188, 63 Pac. 309, and what is said in the opinion in that case upon this subject appears to be *obiter dictum;* however, from the language employed it is possible that, under a state of facts similar to that involved in this case and under a statute similar to ours, the Colorado court might hold contrary to the views we have expressed. But, if so, we can only

say that we are unable to reach that conclusion from a consideration of the language employed in our statutes and the manifest purpose of the legislature in enacting them.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

