EXCHANGE STATE BANK OF GLENDIVE, Respondent, v. OCCIDENT ELEVATOR CO., Appellant.

(No. 7,110.)

(Submitted June 19, 1933. Decided July 19, 1933.)

[24 Pac. (2d) 126.]

*Mr. Howard M. Lewis,* for Appellant, submitted an original and a supplemental brief; *Mr. Lewis* argued the cause orally.

*Mr. F. S. P. Foss,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment entered in the district court of Dawson county. Motion for new trial was made and overruled. Plaintiff, respondent here, instituted an action in conversion, alleging the taking by defendant, appellant here, of 612 bushels of wheat, the property of one Babcock, but mortgaged to plaintiff.

In the complaint is alleged the incorporation of plaintiff and defendant, the execution and delivery for value by Babcock to plaintiff bank of a note for $500, and the execution and delivery by Babcock to the bank of a chattel mortgage covering all crops grown by Babcock in the year 1929 on certain described lands. It is further alleged that the chattel mortgage was duly subscribed, etc., so as to entitle it to be filed; that it was filed in the proper office; that the plaintiff was the owner and holder of the note and mortgage at the time of the institution of the action; that the note was unpaid in the sum of $234.48 and interest; that a crop was sown, grown and harvested by Babcock on part of the land described in the chattel mortgage, and that 622 bushels of the wheat so raised were subject to and covered by the chattel mortgage; that the mortgage provided that, in case of default in payment of the mortgage indebtedness, or in case of the disposal of the property by the mortgagor, or if the mortgagee at any time considered the possession of the property or any part thereof essential to secure the payment of the promissory note, the mortgagee should have the right to the immediate possession thereof; that on or about November 1, 1929, Babcock was in default in the payment of the interest on the note; that prior to that time he had attempted to dispose of the mortgaged property, and that plaintiff did consider the possession of it essential to the security of the payment of the note;

that on November 1, 1929, plaintiff had a property interest in, and was entitled to, the possession of the 622 bushels of wheat; that on or about that date the defendant unlawfully and without the consent of plaintiff took possession of the wheat and converted it to its own use, to the damage of plaintiff in the sum of $639.35; that plaintiff demanded the same or the value thereof and the demand was refused; that plaintiff employed an attorney, and a reasonable attorney's fee was $150. The allegations of the complaint were denied.

The case proceeded to trial before a jury. At the close of plaintiff's case, a motion for nonsuit was made and overruled. Thereupon each party made a motion for an instructed verdict. The court dismissed the jury, and took the case under advisement, and subsequently entered judgment in favor of plaintiff for $312.35, principal and interest on the note, and for costs of the action.

Numerous assignments of error were made and argued at length in the briefs. Most of them are unimportant and do not require specific consideration. The only real question in issue involves the delivery of wheat by Babcock to the elevator. The answer to the following question must decide the issue: Did Babcock deliver the mortgaged wheat to the elevator? It is plain from the record that he did deliver and sell wheat. That much is established.

In the consideration of the foregoing question, appellant has raised the question of agency. It asserts that the man Anderson in charge of the elevator at Lindsey when wheat was delivered by Babcock, and when witness Dion, cashier of respondent bank, visited the elevator, was not shown by competent evidence to be the agent of the appellant elevator company. This feature we will treat later.

The evidence pertaining to the main issue is substantially as follows: H. M. Dion, cashier of the plaintiff bank, testified that he went to defendant's elevator at Lindsey on November 9 or 10, 1929; that one Anderson was in charge "running the elevator"; that witness asked Anderson if Babcock had sold any wheat, and learned that he had sold some wheat a few days

before; that witness asked him if he had looked up to see if there was a mortgage on the wheat, and he said he had. Witness said, "Did you put our name on the checks?" and Anderson answered that Mr. Babcock had said he would fix that up with the bank. Witness then said, "We will have to claim the wheat. You had better try to protect yourself by stopping payment on your checks." Anderson said he would do so; he gave Dion information as to the number of bushels of wheat and the amount of the checks. There were three different checks drawn in favor of Babcock in payment of this wheat. The evidence discloses that Anderson did attempt to stop payment on the checks, but it was too late to do so, and under date of November 16, 1929, he wrote the bank that he had "received wire stating all cash tickets issued to George Babcock were in and paid November 4, 1929." The letter was signed "E. S. Anderson, agent, Occident Elev. Co."

The records of the elevator introduced in evidence showed deliveries of wheat by Babcock to the elevator in excess of 500 bushels between October 17 and 21, 1929, and the issuance to Babcock of storage tickets therefor; they further show the payments to Babcock of the amounts due for the wheat. The tickets were taken up and the amounts due were paid by checks signed by E. S. Anderson, agent of the Occident Elevator Company, Lindsey, Montana. The checks were dated November 1 and 2, 1929, and were for the aggregate amount of $638.90. The last one of the checks was paid November 4, 1929. All checks were indorsed by Babcock and returned to the headquarters of the elevator company at Minneapolis.

Before discussing the weight and admissibility of the evidence, it is important to have in mind that the case was decided by the court on a motion for an instructed verdict. A motion for an instructed verdict is in effect a demurrer to the evidence, and admits as true every fact which the evidence tends to prove. (*Long* v. *Davis*, 68 Mont. 85, 217 Pac. 667; *Anderson* v. *Border*, 75 Mont. 516, 244 Pac. 494.)

The question of the weight to be given to the testimony of plaintiff's witnesses was essentially one for the district

court to determine. The finding of the court will not be disturbed if there is competent evidence to support it. (*Carpenter* v. *Nelson,* 43 Mont. 566, 118 Pac. 272.)

The vital issue in this case is as to the identity of the wheat delivered by Babcock to the elevator, and as to that question there is no direct evidence. Wheat was delivered and sold by Babcock to the elevator at Lindsey, but was it the wheat covered by the mortgage? The trial court made no special findings, but merely entered judgment for plaintiff.

Appellant elevator company contends that there is no evidence as to the identity of the wheat. Respondent contends that the identity of the wheat was established to the satisfaction of the court by circumstantial evidence. Such must have been the fact, because without the circumstantial evidence the court would have been without evidence on that controlling point. It is important to consider just what circumstances were present in the case to justify the implied finding as to the identity of the wheat. Witness A. J. Wyse testified that he harvested with a combine about 900 bushels of wheat for Babcock on the west half of section 27, being a portion of the land described in the mortgage, as that area was summer-fallowed. He testified that the grain was stored in Babcock's granary in the month of October, and that he finished combining and harvesting before November 1. He testified that Babcock did not farm any other land in 1929. He lived about three miles from the Babcock place, and was well acquainted with Babcock, and said he saw him frequently during the summer of 1929.

Witness Dion testified that, when he went to the elevator to inquire about the Babcock wheat early in November, he had the conversation with Anderson, who was in charge. His testimony we have already detailed.

It must be observed that the evidence of the witnesses Wyse and Dion constitutes the circumstantial evidence as to the identity of the wheat. The evidence of Wyse tended to show that Babcock raised and had no other wheat. The evidence of Dion tended to show that, when he delivered the wheat, Bab-

cock had admitted its identity, that it was mortgaged to the bank, and that Anderson, the elevator man, paid Babcock therefor upon the assumption that he (Babcock) would himself settle with the bank. This is the evidence upon which the court must have decided the case, and, of course, it is wholly circumstantial, because no one actually saw Babcock take the wheat from the premises described in the chattel mortgage and deliver it to the elevator.

The rule as to circumstantial evidence in a civil case is that ▮ a party will prevail if the preponderance of the evidence is in his favor. This court has said: "The solution of any issue in a civil case may rest entirely upon circumstantial evidence * * * All that is required is that the evidence shall produce moral certainty in an unprejudiced mind. * * * In other words, when it furnishes support for the plaintiff's theory of the case, and thus tends to exclude any other theory, it is sufficient to sustain a verdict or decision." (*Gilmore* v. *Ostronich*, 48 Mont. 305, 137 Pac. 378; *Shaw* v. *New Year Gold Mines Co.*, 31 Mont. 138, 77 Pac. 515; *Monson* v. *La France Copper Co.*, 39 Mont. 50, 101 Pac. 243, 133 Am. St. Rep. 549.) It is our opinion that the evidence in this case is sufficient to support the judgment.

Defendant throughout the trial objected to the introduction ▮ of the declarations of Anderson, the elevator man. Section 10531, Revised Codes 1921, which lists the facts which may be proved on trial, reads in part: "5. After proof of a partnership or agency, the * * * declaration of a partner or agent of the party, within the scope of the partnership or agency, and during its existence." The statements of Anderson related to the wheat he had purchased for the elevator company a few days prior to his conversation with Dion. If Anderson were in fact the agent in charge of the elevator, he had authority to purchase the wheat. Likewise he was within his authority as agent in attempting to protect the rights of the defendant elevator, after the purchase. He was acting for the elevator company in endeavoring to stop the payment of the wheat checks made to Babcock when he discovered that

the lien of the bank had not been extinguished. It was while thus engaged in an attempt to protect his employer's interests that he made the declarations in question. We are of the opinion that the declarations were made within the course of Anderson's employment, within the rule announced in *Callahan* v. *Chicago etc. R. Co.,* 47 Mont. 401, 133 Pac. 687, 690, 47 L. R. A. (n. s.) 587, as follows: "Now, it is a well-settled rule that when an agent is vested with authority to perform any act for his principal, his words—his verbal acts—while engaged in that business, are a part of the *res gestae* of that business. They are therefore the words and acts of the principal, and may be proved against him." It was likewise said ▆ in the *Callahan Case,* supra, that "whenever a question of fact arises upon conflicting evidence as to whether they are part of the *res gestae,* or depends upon contradictory inferences, either of which may fairly be drawn from uncontradicted evidence; * * * the solution of the question of the admissibility of such evidence must in every case be left largely to the sound legal discretion of the trial court, subject to review only in cases of manifest abuse." It is clear that the trial judge in this case did not abuse his discretion in admitting the declarations of Anderson.

We then come to the question whether Anderson was in fact the agent of the defendant corporation. A. H. Helland, sheriff of Dawson county, testified: "I went over to the Occident Elevator there and at that time an agent was there. His name was Anderson." W. W. Wood, superintendent of the Occident Elevator Company, testified that Anderson was the agent of the defendant at Lindsey in June, 1929. This testimony was all admissible.

The relation of principal and agent is a condition to which ▆ anyone having personal knowledge may testify. (1 Mechem on Agency, 2d ed., sec. 260; *Ruthven* v. *Clarke,* 109 Iowa, 25, 79 N. W. 454; *Heusinkveld* v. *St. Paul F. & M. Ins. Co.,* 106 Iowa, 229, 76 N. W. 696, 698; *Lough* v. *John Davis & Co.,* 35 Wash. 449, 77 Pac. 732; *Roberts & Sons* v. *Williams,* 198 Ala. 290, 73 So. 502; *Oden-Elliott Lumber Co.* v. *Daniel-*

*Gaddis Lumber Co.,* 210 Ala. 582, 98 So. 730.) ''Although the relation of principal and agent is a legal one, depending upon the existence of certain facts, and the statement that it exists may be in the nature of a conclusion, yet the relation is also a condition of which anyone having personal knowledge of it may testify subject, however, to the test of cross-examination.'' (*Heusinkveld* v. *St. Paul F. & M. Ins. Co.,* supra.)

Nor is the testimony of Wood rendered inadmissible by ▋▋ reason of the fact that he was an agent of the defendant within the rule announced in 22 C. J. 376, to the effect that an agency cannot be proved by the statements of other persons claiming to be agents of the party sought to be charged, but whose authority is not shown to extend to binding their principal by such statements. This is unquestionably the correct rule so far as it relates to declarations made by agents, but it does not apply to testimony given by an agent in the trial of a cause. In the case of *Nyhart* v. *Pennington,* 20 Mont. 158, 50 Pac. 413, the court distinguished between the declarations of an agent and his sworn testimony, in connection with the rule that an agency cannot be proved by the declarations of the agent whose statements are sought to be charged to the principal. That same distinction is applicable here. Declarations of agents are not admissible to prove the authority of another who is alleged to be the agent of their principal, but there is no rule of law which disqualifies an agent from testifying under oath as to the authority of another, alleged to be the agent of their common principal, providing, however, that his testimony is based upon his personal knowledge. The evidence of Wood to the effect that Anderson was the agent of the elevator company in June, 1929, was both admissible and persuasive. The burden of proving the termination of an agency is on the principal, and, once established, the agency, if the termination is not shown, is presumed to continue. (*Healy* v. *Ginoff,* 69 Mont. 116, 220 Pac. 549; 1 Nichols on Applied Evidence, p. 442.)

Witness Dion testified that Anderson was at defendant's ▋ elevator; that he was the only man there; that he was

running the elevator; and that he went over the books of the elevator with him (Dion). Sheriff Helland also testified that he saw Anderson at the elevator, apparently in charge thereof. Circumstantial evidence of this sort has been held sufficient to establish an agency. (*Markley* v. *Western Union Tel. Co.*, 144 Iowa, 105, 122 N. W. 136, 138 Am. St. Rep. 263; *Columbus etc. Ry. Co.* v. *Powell*, 40 Ind. 37; see, also, *Hein* v. *Mildebrandt*, 134 Wis. 582, 115 N. W. 121.)

In the ascertainment of the amount due on the mortgage ▆▆ ▆▆ indebtedness, plaintiff offered in evidence, and introduced over the objection of the defendant, the return of a sale of other chattels covered by the chattel mortgage. The record discloses that the chattel mortgage, in addition to the wheat, covered other personal property, and that, after Babcock sold the wheat and collected for the same, he quit the country and left the other chattels. When witness Dion investigated the matter, he found that the wheat had been sold, and he thereupon placed a certified copy of the mortgage in the hands of the sheriff and directed him to sell the other property. The sheriff seized the property, other than the wheat, and sold it. In the course of the trial, in order to explain the credit, the return was offered. The defendant objected thereto because of patent irregularities: (1) That the property was not advertised for a sufficient length of time; and (2) that the return was not filed by the sheriff within the statutory time. The court overruled the objections and admitted the return.

The defendant offered to prove that the property sold by the sheriff was worth more than the selling price; in other words, that there was sufficient property, other than the wheat, to satisfy the mortgage. This evidence was excluded, and rightly so.

Both propositions involved a collateral attack upon the sheriff's sale. The sale was not void because of insufficient notice. The various acts which a sheriff is by statute required to perform in connection with such a sale are generally regarded as directory merely and not as being essential to

give him power to sell. The sale was not absolutely void, but may have been voidable. The court did not commit error in receiving the returns or in refusing to admit the evidence as to the value of the property sold at sheriff's sale. (*State ex rel. Coffey* v. *District Court,* 74 Mont. 355, 240 Pac. 667; *Burton* v. *Kipp,* 30 Mont. 275, 76 Pac. 563.)

There was some irregularity in the admission of proof, in that some of the statements of Anderson were admitted before the complete proof of the agency was in evidence. However, this relates merely to the order of proof, which is within the sound discretion of the court, and, since the agency was established, defendant's rights were not prejudiced. (*Butte etc. Min. Co.* v. *Barker,* 35 Mont. 327, 89 Pac. 302.)

Other assignments of error have been considered, but it is not necessary to discuss them at length. The record as a whole discloses no reversible error.

Judgment affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and ANDERSON concur.