RAIRDEN, Appellant *v.* HEDRICK, Respondent.

(No. 3,150.)

(Submitted January 6, 1913.　Decided January 20, 1913.)

[129 Pac. 498.]

*Chattel Mortgages—Conditional Sales—Security—Tender—Instructions—Issues—Determination, as of What Date—Delivery—Special Interrogatories.*

Chattel Mortgage—Pledge—Possession.
　　1.　While the lien of a pledge is dependent upon possession, a chattel mortgage is valid, even though the mortgagor retains possession of the mortgaged property.

Same—Conditional Sale—Intention of Parties.
　　2.　A bill of sale with an option to repurchase may amount to a chattel mortgage or to a conditional sale, dependent upon the surrounding circumstances, including the intention of the parties.

Same—Bill of Sale—When Considered Security Only.
　　3.　Where, in a claim and delivery action to recover the possession of certain horses, a bill of sale for which, with an option in him to repurchase, had been given by defendant, the evidence disclosed that the transaction in its inception had for its purpose a loan; that defendant was in financial straits at the time; that the price therein named was grossly inadequate; and other circumstances indicative of the purpose that the question of security was in the minds of the parties when the paper was executed and delivered,—the jury properly found that a chattel mortgage and not a conditional sale was intended.

Same—Oral Evidence—Interpretation of Instruments.
　　4.　Oral evidence which tended to place the trial court in the position of the parties to a bill of sale whose language it was called upon to interpret was not objectionable as contradicting or varying the terms of the writing.

Same—Tender—When Unnecessary.
　　5.　One who asserted that a transfer of personal property was to secure a loan was not obliged to make a tender of the amount thus secured,

where his opponent denied the existence of a debt but claimed that the transaction was a sale.

Instructions—Refusal—Harmless Error.
6.  The refusal of an instruction upon a matter decided by the jury in appellant's favor, if error, was harmless.

Issues—Determination as of What Date.
7.  In the absence of supplemental pleadings, all issues must be determined as of the date of the commencement of the action.

Personal Property—Delivery—Question of Fact.
8.  Whether the act of defendant in delivering property to a railroad company for shipment and the naming of plaintiff in the bill of lading as consignor and consignee constituted a delivery depended upon the intention of the parties at the time; the question *held* properly submitted to the jury.

Trial—Special Interrogatories—Submission—Commendation of Practice.
9.  The submission of special interrogatories to the jury is a matter addressed to the sound, legal discretion of the trial court; the observance of the practice, rather than constituting error, *held* promotive of justice.

*Appeal from District Court, Custer County; Sydney Sanner, Judge.*

ACTION by William Rairden against W. A. Hedrick. Judgment for defendant, and plaintiff appeals from it and an order denying him a new trial. Affirmed.

*Messrs. Loud & Campbell,* for Appellant, submitted a brief, and *Mr. Donald Campbell* argued the cause orally.

It is our contention that the bill of sale constituted an executed sale, and by it the title passed from the vendor to the vendee. "When the terms of sale are agreed upon and the bargain is struck, and everything that the seller has to do with the goods is complete, the contract of sale becomes absolute as between the parties, without actual payment or delivery." (2 Kent's Commentaries, sec. 492; *Hatch* v. *Standard Oil Co.,* 100 U. S. 124, 25 L. Ed. 554; *Leonard* v. *Davis,* 66 U. S. 476, 17 L. Ed. 222.) In the lower court we contended, as we do here, that the transaction between appellant and respondent constituted a conditional sale. Chancellor Kent, in speaking of contracts of sale reserving to the seller the right to repurchase the goods upon terms agreed upon, says: "Such defeasible purchases, though narrowly watched, are valid, and to be taken strictly as independent dealings between strangers; and the time limited for the repurchase must be precisely observed or

the vendor's right to reclaim his property will be lost." And again: "The case of sale with an agreement for a repurchase within a given time is totally distinct and not applicable to mortgages." (4 Kent's Commentaries, 144.) The rule so announced has been favorably commented upon and adopted by Mechem in his work on Sales and by many courts of recognized ability and high standing. (See Mechem on Sales, sec. 689; *Beck* v. *Blue,* 42 Ala. 32, 94 Am. Dec. 630; *Slowey* v. *McMurray,* 27 Mo. 113, 72 Am. Dec. 251; *Conway* v. *Alexander,* 7 Cranch, 218, 3 L. Ed. 321; *Parish* v. *Gates,* 29 Ala. 254; *Camp* v. *Thompson,* 25 Minn. 175; *Morris* v. *Angle,* 42 Cal. 236; *Vasser* v. *Vasser,* 23 Miss. 184; *Brown* v. *Dewey,* 2 Barb. (N. Y.) 28; *Holmes* v. *Grant,* 8 Paige (N. Y.), 243; *Cowell* v. *Craig,* 79 Fed. 685; *Bridges* v. *Linder,* 60 Iowa, 190, 14 N. W. 217; *Lee* v. *Kilburn,* 69 Mass. 594; *Stryker* v. *Hershy,* 38 Ark. 264; *Mason* v. *Moody,* 26 Miss. 184.) A sale reserving to the seller the right to repurchase is not a mortgage, especially when there is no debt to be secured and no obligation to repay; if, however, there is a right reserved by the buyer to demand and enforce repayment, the transaction is not a sale, but in the nature of a mortgage. (35 Cyc. 39.) It may be laid down as a general rule that where the relation of debtor and creditor remains, and a debt still subsists, the transaction is a mortgage; but if the debt be extinguished by the agreement of the parties by the execution of the conveyance, and the grantor has the privilege of refunding and to entitle himself to the reconveyance thereby, it is a conditional sale. (*Hoopes* v. *Bailey,* 28 Miss. 329; *Brewster* v. *Baker,* 20 Barb. (N. Y.) 364; *Locke* v. *Palmer,* 26 Ala. 312; *Flagg* v. *Mann,* 31 Mass. 467.) Under these authorities, as well as in all other cases which we have examined, the courts hold that the relation of debtor and creditor must exist, and there must be a subsisting debt, in order to justify the court in holding the transaction to be a mortgage.

By an examination of the case of *Flagg* v. *Mann, supra,* it will be seen that the reasoning employed in reaching the decision is equally applicable to the facts of this case, in determining whether the transaction between the parties was a mortgage or

a sale, with a contract for a repurchase upon strict terms. There, as here, respondent proposed that appellant should lend the money and take the property as security, but he declined. According to the language of the instruments and the testimony on the part of appellant, he refused to lend the money, but proposed to purchase the property outright and to make a contract to resell upon terms.

*Mr. George W. Farr* submitted a brief in behalf of Respondent, and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is an action in claim and delivery brought by the appellant, who was plaintiff in the district court, to recover possession of twenty-six head of horses or their value, alleged to be $1,900. The complaint is brief and in the form usually employed where the plaintiff makes claim of absolute ownership. The answer denies ownership or right of possession in plaintiff, and then sets forth that defendant is the owner of the property and has been such continuously since prior to March 1, 1909; that on the last-mentioned date he executed and delivered to the plaintiff a bill of sale for the property in controversy, and contemporaneously therewith he and plaintiff executed an agreement, by the terms of which defendant was given the option to repurchase the property upon paying to plaintiff $1,281.25, with interest from March 1, 1909, at the rate of —— per cent per annum, and also the expenses necessarily incurred in caring for the property. The contract provides for shipping the horses to North Dakota, and further provides that defendant should have —— days after the horses reached their destination in North Dakota within which to make payment of the repurchase price. It is further alleged that on March 1, 1909, defendant borrowed from the plaintiff $1,281.25, and that it was to secure such loan that the bill of sale and contract to repurchase were made; that possession of the property was retained by the defendant; that by mistake the contract recited that the horses

were to be shipped to North Dakota, whereas it was intended that they should be shipped to Baker, in eastern Montana. It is alleged that the horses were shipped to Baker in the name of plaintiff as consignor to himself as consignee; that the defendant paid all the charges and expenses; that at Baker he took possession of the horses and retained sole control thereafter; that it was mutually understood between plaintiff and defendant that defendant was to have a reasonable time after the horses reached Baker, within which to discharge the debt. These affirmative allegations were put in issue by reply. Upon the trial eight special interrogatories were submitted to and answered by the jury. A general verdict in favor of defendant was also returned. From a judgment in favor of defendant and from an order denying plaintiff a new trial these appeals are prosecuted.

1. The principal question raised by the pleadings is whether the transactions between plaintiff and defendant on March 1, 1909, amounted to a mortgage or a conditional sale. There are not involved any rights of creditors or subsequent purchasers or encumbrancers, and the questions at issue are to be determined as between the parties to the original proceedings alone.

While the lien of a pledge is dependent upon possession, the [1] same rule is not applicable to a chattel mortgage. As between the parties to it, the chattel mortgage is valid even though the mortgagor retains possession. The provisions of sections 5757 to 5773, Revised Codes, are for the protection of creditors and subsequent purchasers and encumbrancers in good faith for value. That a bill of sale, absolute on its face, may be in fact a chattel mortgage is recognized by our Codes (Rev. Codes, sec. 5768) and by the authorities generally; and so likewise a [2] bill of sale with an agreement to repurchase may amount to a chattel mortgage or to a conditional sale, dependent upon the surrounding circumstances, including the intention of the parties. (Mechem on Sales, sec. 688.) But the subject has so recently received the attention of this court that an extended examination of it is now unnecessary. In *Murray* v. *Butte-Monitor T. Min. Co.*, 41 Mont. 449, 110 Pac. 497, 112 Pac. 1132, we considered the subject at great length. The controversy there

[3] was whether certain transactions amounted to a conditional sale or a pledge; but aside from the one element of possession, the rules applicable in that controversy are equally applicable here: (1) The transaction in this instance in its inception had for its purpose a loan and not a sale. There is not any conflict in the evidence that Hedrick's original application was for a loan, to be secured by a chattel mortgage upon these horses. That application was made to George May, who furnished to this plaintiff the money which was turned over to the defendant. (2) Hedrick was in financial distress at the time of the transactions of March 1, 1909. A bank in Missoula held a chattel mortgage upon these horses. Hedrick desired to remove the horses from the Bitter Root valley to eastern Montana, but was not able to do so on account of the encumbrance then on them. These facts were known to the plaintiff and to May, as disclosed by their own testimony. (3) The price ($1,281.25) which plaintiff claims he paid for the horses was grossly inadequate according to his own pleadings and the testimony of his witnesses. Within less than sixty days after March 1 he alleged that these horses were worth $1,900, and his witnesses place a considerably higher valuation upon them than that amount. (4) The fact that the bill of sale was accompanied by an option to the defendant to repurchase is strongly indicative that a mortgage was intended. The foregoing circumstances were considered at length in *Murray* v. *Butte-Monitor T. Min. Co.*, above, and a reference to the decision in that case suffices. But in addition there is present in this record further evidence in support of defendant's theory that a mortgage was intended. (5) Neither the plaintiff nor May, who furnished the money to him, took into consideration the value of the property at the time of the transactions of March 1, but only considered the amount of money necessary to discharge the defendant's indebtedness to the Missoula bank. (6) The plaintiff did not have any money with which to purchase these horses, and there is not anything in the evidence to indicate that he contemplated embarking in the horse business, but rather the contrary appears to be the fact. The negotiations started between defendant and May, and May fur-

nished the money which the plaintiff turned over to this defendant. (7) There is evidence—which the jury apparently believed—that the plaintiff offered to assign the bill of sale to one Herman and told Herman that he (plaintiff) was working for an outfit that had a mortgage on these horses, and that he was present to see that the debt was collected; that plaintiff further inquired of the cashier of the Baker State Bank whether defendant had made preparations for the money "to pay off the debt on the horses," and said that he was down there in the interest of May brothers. This evidence was properly admitted as indicating the construction which the plaintiff himself put upon the instruments under consideration. Whether the transactions between these parties were intended to constitute a sale or merely security for a loan was properly submitted to the jury, and by special finding No. 3 the jury found that the parties intended them to constitute "security for a loan."

2. Complaint is made that oral evidence was admitted which, [4] it is said, tends to contradict or vary the terms of the writings, but with this we do not agree. The admission of the evidence in question was fully warranted by the provisions of sections 7876 and 7877, Revised Codes. It tended to place the trial court in the position of the parties whose language was to be interpreted.

3. Complaint is also made that the trial court permitted too wide a latitude in the cross-examination of plaintiff and his witnesses; but with this we do not agree. The examination was well within the limits prescribed in *State* v. *Rodgers*, 40 Mont. 248, 106 Pac. 3, *State* v. *Howard*, 30 Mont. 518, 77 Pac. 50, *State* v. *Barrett*, 43 Mont. 502, 117 Pac. 895, and *Knuckey* v. *Butte Electric Ry. Co.*, 45 Mont. 106, 122 Pac. 280.

4. It was not necessary for the defendant to prove a tender. The plaintiff in his reply having denied the existence of a debt, [5] it would have been an idle ceremony to make a tender of the amount which defendant claims is only a debt. (*Christiansen* v. *Aldrich*, 30 Mont. 446, 76 Pac. 1007; *Finlen* v. *Heinze*, 32 Mont. 354, 80 Pac. 918; *Long* v. *Needham*, 37 Mont. 408, 96 Pac. 731.)

5. According to the defendant's theory, the debt secured by the mortgage upon these horses did not become due until June 1, 1909. Plaintiff commenced this action on April 22, 1909. [6] In answer to special interrogatory No. 4 the jury found according to defendant's contention, and it follows, therefore, that if there was any error in the refusal of the trial court to give plaintiff's requested instruction No. 7, the error was without prejudice.

6. And it was not error for the court to refuse plaintiff's requested instruction 15. In the absence of supplemental plead- [7] ings, all issues are to be determined as of the date of the commencement of the action. (21 Ency. of Pl. & Pr. 9.)

7. Likewise no prejudice resulted to the plaintiff from the failure of the trial court to give his offered instruction 18; for by special finding No. 1 the jury found according to plaintiff's theory as outlined in that offered instruction.

8. Error is predicated upon the refusal of the trial court to give plaintiff's offered instruction No. 10, to the effect that [8] delivery of the horses to the railway company at Stevensville and the designation of plaintiff as consignor and consignee in the bill of lading constituted a delivery of the horses to the plaintiff by defendant, as a matter of law. We are not able to agree with counsel for appellant. We think the court properly submitted the question to the jury, and the jury found that there never was a delivery of the property to the plaintiff. Whether the acts mentioned constituted a delivery depended upon the intention of the parties at the time. In *Webster* v. *Sherman,* 33 Mont. 448, 84 Pac. 878, this court said: "No particular act or formal ceremony is necessary to make a delivery in law. Any act done, coupled with the intent to change the ownership, which has the effect to transfer the dominion over the thing sold to the buyer, is a delivery."

9. Fault is found with the action of the trial court in submitting special interrogatories to the jury. Whether special inter- [9] rogatories shall be submitted in a given case is a question addressed to the sound, legal discretion of the trial court (Rev. Codes, sec. 6758; *Hollingsworth* v. *Davis-Daly E. C. Co.,* 38 Mont.

143; .99 Pac. 142; *Poor* v. *Madison River Power Co.*, 41 Mont. 236, 108 Pac. 645); and in the absence of any showing of an abuse of such discretion, the action of the trial court will not be disturbed. However, the practice observed by the trial court in this instance has been commended by this court, (*O'Meara* v. *McDermott*, 40 Mont. 38, 104 Pac. 1049), and we are satisfied that if the same practice was observed more generally, justice would be promoted thereby.

We have examined every error assigned but have treated only those which appear to us most important. We do not find any reversible error in the record, and the judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurred.

MR. JUSTICE SANNER, being disqualified, did not hear the argument and takes no part in the foregoing decision.