LEONARD TEESDALE, Plaintiff and Respondent, v. AN-
SCHUTZ DRILLING COMPANY, a Colorado Corporation,
Defendant and Appellant.

No. 10136.

Submitted September 23, 1960. Decided November 17, 1960.

Rehearing denied Dec. 14, 1960.

357 P.2d 4.

DeKalb, Dockery, Mondale & Johnson, Lewistown, Toomey & Hughes, Helena, for appellant. Walter E. Mondale, H. Leo-

nard DeKalb, Lewistown, and Michael J. Hughes, Helena, argued orally.

Swanberg, Swanberg & Koby, Great Falls, Randall Swanberg, Great Falls, argued orally, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment in favor of plaintiff and against defendant in the district court of the tenth judicial district.

The action was brought by plaintiff for damages resulting from personal injuries sustained by him in a fall from a water tank which was in the control of defendant at the time of the accident.

The facts of this case can be ascertained by an examination of the allegations and denials of the pleadings of plaintiff and defendant. Hancock Oil Company hired defendant, Anschutz Drilling Company, to drill an oil well for them. Hereinafter Hancock Oil Company will be referred to as Hancock and Anschutz Drilling Company as defendant.

Plaintiff alleged that in the month of June 1956, he was engaged in hauling water to the site of the drilling operations of defendant, such water being required by defendant in these drilling operations. He alleged that defendant maintained and had exclusive control over the water tank on this site and that such water tank was equipped with a ladder on the side, and a water line running up the tank alongside the ladder. He further alleged that the ladder terminated at the top of the tank, whereas, the water line continued on up about two feet above the top of the tank. It was further alleged that on the side of this pipe, near the top, there was a coupling extending out to the side, to which was attached a heavy rubber hose, which ran over to a hole in the top of the tank, for the purpose of delivering the water.

Plaintiff alleged that since there was no gauge on the tank,

it was necessary for him to climb the ladder to the top of the tank and look into the hole, in order to check the level of the water in the tank. It was his custom, when arriving at the top of the ladder, to take hold of the metal nipple or coupling, which connected the rubber hose to the pipe, and swing himself up on top of the tank. Plaintiff alleged that this nipple or coupling was securely fastened and provided a safe handhold for the first twelve days of June 1956. He alleged that on the twelfth day of June, or during the night, defendant was engaged in painting the tank, and in the course of the painting, the coupling became loose, so that it was not safe. It was alleged that as a result of this condition, when plaintiff climbed the ladder on June 13, the coupling came loose in his hand when he took hold of it, and he fell backwards off the ladder, landed on his chest on a junk rack below, and fell from there to the ground, sustaining severe personal injuries.

Plaintiff alleged that his fall was the result of the negligence of defendant in failing to have the coupling in a safe condition, in failing to reconnect it after it had been loosened, and in failing to warn plaintiff of its condition. Plaintiff further alleged the extent of his injuries resulting from this fall.

Defendant, in its answer, admitted the corporate existence of itself and Hancock, admitted that it was drilling an oil well for Hancock, but denied the remainder of the allegations of the complaint.

It appeared, from all of the evidence concerning the question, that plaintiff was hired by Hancock to furnish the water for the drilling operations and that defendant acquiesced and approved of this arrangement.

Defendant has assigned seventeen specifications of error in its brief. It should be noted that some of these specifications of error are not argued in the brief and may not be considered by this court since they are deemed to be waived. Western Mining Supply Co. v. Melzner, 48 Mont. 174, 136 P. 44. We believe that the remaining specifications of error resolve them-

432

selves into eight main questions for our consideration on this appeal. Each of these questions will be considered separately.

The first question concerns the legal relationship between plaintiff and defendant and the consequent duty of defendant to plaintiff.

At the outset of a consideration of this question, it should be noted that, at the trial, there was a question concerning the ownership of the water tank at the time of the accident. Defendant seemed to urge that the tank was actually owned by Hancock and not defendant. There was ample evidence indicating that defendant had exclusive control of the tank at the time of the accident. There was testimony that defendant kept the tank cleaned and painted and treated it as its own. There was evidence that the tank was owned by defendant following the accident, and that it was moved with the rest of defendant's equipment to subsequent drilling jobs. There was no actual evidence offered to show that the defendant did not own the water tank. We believe that there was sufficient evidence to show at least a proprietary interest on the part of defendant in the water tank.

Defendant contends that plaintiff was not an invitee of defendant while climbing the water tank and, at most, was only a licensee. In support of this contention, defendant claims that plaintiff contracted exclusively with Hancock to furnish the water which was needed for the drilling of the oil well. From the record it appears that plaintiff actually was under contract with Hancock to furnish the water. However, there was evidence that one of defendant's representatives was present when Hancock approached plaintiff concerning the job, and that defendant fully acquiesced in having plaintiff furnish the water. There was also evidence that defendant's representative indicated to plaintiff how to use the ladder in checking the water level of the tank and also evidence that defendant's employees observed plaintiff climbing this ladder twice a day for twelve days before the accident.

In the case of Jonosky v. Northern Pac. Ry., 57 Mont. 63, 73, 187 P. 1014, 1015, this court stated the distinction between invitation and license as follows:

"* * * Much of the confusion arises from the failure of the courts to distinguish between a license and an invitation, and particularly between an implied license and an implied invitation. The distinction is not merely one of descriptive phraseology, but has its foundation in sound common sense. An invitation is inferred where there is a *common interest or mutual advantage,* while a license is implied where the object is the mere pleasure, convenience, or benefit of the person enjoying the privilege.'' Emphasis supplied.

This common interest or mutual advantage test, as applied in the Jonosky case, has been expressly affirmed in the later Montana decisions of Hickman v. First Nat. Bank of Great Falls, 112 Mont. 398, 117 P.2d 275, and Ahlquist v. Mulvaney Realty Co., 116 Mont. 6, 152 P.2d 137. Also see Thompson v. Yellowstone Livestock Commission, 133 Mont. 403, 324 P.2d 412, which approved the same type of language as it was used in a California decision.

Applying this common interest or mutual advantage test to the facts in the instant case, we conclude that plaintiff was an invitee of defendant at the time of the accident. There was uncontroverted testimony in the record which indicated that large quantities of water are indispensable in the drilling of an oil well. It is evident that defendant required and used water in drilling the well and plaintiff furnished this water. Without the water defendant's drilling would be discontinued. For this reason, the presence of plaintiff on the water tank in order to furnish the water for the drilling of the oil well was for the common interest or mutual advantage of both plaintiff and defendant, and he was an invitee of defendant while on the tank.

Since the relationship between plaintiff and defendant was an invitee-invitor relationship, defendant owed plaintiff the duty of exercising reasonable or ordinary care and a failure

to exercise such care would constitute actionable negligence on the part of defendant. Montague v. Hanson, 38 Mont. 376, 99 P. 1063; Chichas v. Foley Bros. Grocery Co., 73 Mont. 575, 236 P. 361; McCulloch v. Horton, 102 Mont. 135, 56 P.2d 1344; Nichols v. Consolidated Dairies, 125 Mont. 460, 239 P.2d 740, 28 A.L.R.2d 1216.

The second question concerns the sufficiency of the evidence of negligence on the part of defendant. This question was raised by defendant by specifying error in that the district court overruled the separate motions of defendant for nonsuit, for a directed verdict, and for a new trial on this ground.

Much of the evidence of negligence in this case is circumstantial. In Exchange State Bank of Glendive v. Occident Elevator Co., 95 Mont. 78, 87, 24 P.2d 126, 129, 90 A.L.R. 740, this court stated the following rule:

"The rule as to circumstantial evidence in a civil case is that a party will prevail if the preponderance of the evidence is in his favor. This court has said: 'The solution of any issue in a civil case may rest entirely upon circumstantial evidence * * *. All that is required is that the evidence shall produce moral certainty in an unprejudiced mind. * * * In other words, when it furnishes support for the plaintiff's theory of the case, and thus tends to exclude any other theory, it is sufficient to sustain a verdict or decision.' [Citing other Montana authority.]"

The testimony of plaintiff concerning the negligence of defendant was as follows: When he climbed the ladder for the first time he checked the ladder rungs and the connection where the pipe and hose joined together to make certain that they were solid and safe, and found that everything was solid at that time. There was nothing other than the handhold which consisted of the hose and the connection, suitable to use in climbing up on top of the tank in order to check the water level of the tank. Plaintiff had no trouble with the handhold during the first twelve days of use and during that time he had seen

employees of defendant climbing the tank in the same manner in which he climbed it. Defendant's employees had also observed plaintiff climbing the tank and had said nothing to him about using the hose and connection as a handhold. Plaintiff constantly checked the handhold to make sure that it didn't leak water and he never saw any water leakage from this connection. As plaintiff was about to seize the handhold at the time of the accident it looked as it always had, and plaintiff had no feeling it was any different. When plaintiff seized it in his normal way it "let loose" and felt "just like it wasn't there." He also testified that during the two or three days prior to the accident there had been much painting around the entire rig.

Bill Wyze, one of defendant's employees at the time of the accident, testified as follows: He and the rest of the crew were engaged in the cleaning or washing of the tank the day before the accident during the shift from 3:30 to 11:30 o'clock p.m. The purpose of this cleaning or washing was to prepare the tank for painting. Ordinarily the tank was painted about every thirty days. Soap, water and diesel fuel were used in the washing of the tank. When this witness came on shift the next day, approximately an hour and a half after the accident, he thought that the tank had been newly painted since it looked like it had been painted. At this time he climbed the tank at the direction of his father, who was the toolpusher or supervisor for defendant, and found the hose hanging loose from its connection with the pipe.

The rule concerning a motion for nonsuit or directed verdict has been stated in Mellon v. Kelly, 99 Mont. 10, 20, 41 P.2d 49, 52, as follows:

"This court has often announced the rule that upon motion for nonsuit or directed verdict the evidence must be viewed from the standpoint most favorable to plaintiff, and every fact must be deemed proved which the evidence tends to prove. * * * No case should ever be withdrawn from the jury when

reasonable men might draw different conclusions from the evidence.''

This rule is firmly established by other decisions of this court, and we feel that further citation on the point is unnecessary.

The above-stated evidence concerning negligence on the part of defendant is sufficient to fall within the rule of the Mellon case. There was no error committed on the part of the district court in denying defendant's motions for a nonsuit and a directed verdict. The evidence, as stated, established that the handhold had been safe for twelve days and on the thirteenth day it was loose. There was evidence that the crew had been cleaning and painting the tank the day and night before the accident. This evidence tends to prove that an employee of the defendant uncoupled the hose while washing and painting the water tank and failed to recouple it. Reasonable men might come to this conclusion from plaintiff's evidence.

Upon the motion for new trial, there is even more evidence of negligence which the district court could consider. This evidence consisted of the testimony of defendant's own witnesses.

Dugan Sanders, who was in charge of the 11:30 p.m. to 7:30 a.m. shift, testified that he and his crew had washed the tank completely from top to bottom the night before the accident and painted one-half of it that night. During the night each one of his crew, including himself, was on top of the tank — a total of four men. The connection was also washed in the process. There was also other testimony from defendant's witnesses that the tank had been washed and partly painted the night before the accident. There was some evidence from defendant's witnesses that conflicted with the testimony of plaintiff's witness, Bill Wyze.

Where the sufficiency of the evidence was attacked by a motion for new trial this court, in the case of Wallace v. Wallace, 85 Mont. 492, 502, 279 P. 374, 377, 379, 66 A.L.R. 587, has stated:

"It follows that wherever there is a conflict in the evidence this court may only review the testimony for the purpose of determining whether or not there is any substantial evidence in the record to support the verdict of the jury, and must accept the evidence there found as true, unless that evidence is so inherently impossible or improbable as not to be entitled to belief; and, where a verdict is based upon substantial evidence which, from any point of view, could have been accepted by the jury as credible, it is binding upon this court, although it may appear inherently weak. * * * Where the evidence is conflicting, but substantial evidence appears in the record to support the judgment, the judgment will not be disturbed on appeal, and this is especially true when the court, as here, has passed upon the sufficiency of the evidence on motion for a directed verdict and motion for a new trial and upheld its sufficiency." This language was quoted with approval in the later Montana decision of Batchoff v. Craney, 119 Mont. 157, 172 P.2d 308.

There was substantial evidence to support the judgment, and the district court acted properly in denying defendant's motion for a new trial on this ground. The jury could find, from the evidence, that defendant did not exercise the reasonable care required of it.

The third question concerns alleged misconduct on the part of the jury which was raised as one ground for defendant's motion for a new trial.

It appears that defendant obtained and filed the affidavits of nine of the jurors in an effort to show jury misconduct. Plaintiff obtained and filed counter-affidavits of eleven of the jurors. Defendant then obtained and filed reply affidavits of eight of the same jurors. Defendant is attempting to show that the verdict was determined by chance in violation of section 93-5603, subd. 2, R.C.M. 1947, and that for this reason defendant should have been allowed a new trial. Such a verdict is commonly referred to as a quotient verdict.

In the case of Great Northern Ry. Co. v. Benjamin, 51 Mont. 167, 172, 149 P. 968, 969, this court has stated the rule concerning quotient verdicts as follows:

"* * * We do not know that any court has ever condemned the practice, quite prevalent with jurors, of taking the aggregate of the amounts representing their divergent views as to an award to be made and dividing that sum by the number of jurors as a means of ascertaining the average or as a basis for further consideration. It is only when the jurors *agree in advance* that the quotient thus obtained shall constitute the amount of their verdict, and such agreement is carried into effect, that the proceeding constitutes a resort to the determination of chance and is condemned by the statute above [referring to what is now section 93 5603, subd. 2]". Emphasis supplied.

From an examination of the jurors' affidavits it appears that the jury did follow a method of adding the figures of the divergent views concerning the amount of damages and dividing the figure so obtained by the number of jurors in arriving at part of its verdict. However, rather than to unduly lengthen this opinion, suffice it to say that after a careful examination of the jurors' original affidavits, counter-affidavits, and reply affidavits, we find that the trial court did not err in finding that there was no prior agreement on the part of the jurors to bind themselves to accept the final amount as their verdict. For this reason the denial of the motion for new trial on this ground did not constitute error on the part of the district court.

The fourth question concerns the admission into evidence over defendant's objection, of plaintiff's exhibits numbered 1, 2, and 3, which were photographs of the water tank taken some time after the accident, when the tank had been moved to another location. This question also involves the testimony that was received as a foundation for the admission of these photographs.

The objection by defendant concerns two claimed errors.

First, defendant claims that the photographs were not admissible since they were taken *after* the accident when the tank had been moved to a different location. Secondly, defendant claims that the foundation testimony concerning changes in the appearance of the tank was prejudicial to defendant since it tended to show antecedent negligence on the part of defendant.

It appears from the record that these three photographs were snapshots of the water tank which were taken by plaintiff about one year after the accident. As a foundation for the admission of the photographs the plaintiff testified to certain changes in the appearance of the water tank which had occurred between the time of the accident and the time the photographs were taken. These changes consisted of a substitution of metal pipe for the rubber hose which plaintiff had used as a handhold and the installation of a gauge which was put on the tank so the water level could be determined without climbing the tank.

The trial court has wide discretion in admitting diagrams, maps and photographs that will assist the jury in understanding a case. Gobel v. Rinio, 122 Mont. 235, 200 P.2d 700.

In McNair v. Berger, 92 Mont. 441, 459, 15 P.2d 834, 838, this court stated the following rule concerning the admissibility of photographs:

"* * * The general rule governing the admissibility of photographs is that they stand upon the same footing as a map or plat. * * * And 'it is not even necessary that the situation or condition should be precisely the same, but it is sufficient if the situation is substantially unchanged, *and even the fact that there have been changes in conditions, will not necessarily exclude a photograph where the changes can be and are explained, so that the photograph, as explained, will give a correct understanding of the condition existing at the time to which the controversy relates.*' 22 C.J. 920.'' Emphasis supplied.

It appears that this water tank was hard to visualize and pictures would enable the court and the jury to gain an understanding of the conditions at the time of the accident.

From the rule in the McNair case, it can be seen that when pictures are admitted into evidence it is proper, as was done in this case, to explain any changes that have occurred between the time of the accident and the time the pictures were taken. Therefore, the testimony which was presented as a foundation for the admission of the photographs was properly received. Even if such testimony would tend to show antecedent negligence on the part of the defendant this court is committed to the rule that evidence may be admissible for one purpose but not for another, but if it is admissible for any purpose it may not be excluded. Edquest v. Tripp & Dragstedt Co., 93 Mont. 446, 19 P.2d 637.

The fifth question concerns rulings of the district court on objections by defendant to certain portions of the testimony of plaintiff's witness, Bill Wyze. This objection is divided into two parts, the first concerns the admission of certain claimed opinions of the witness, and the second concerns claimed hearsay testimony of the witness with regard to statements made by his father, since deceased, who was the supervisor for defendant on the job.

The claimed opinion testimony of the witness was contained in an answer to a question where he asserted that there was nothing at the top of the ladder that was suitable to grab onto besides either the pipe, the hose or the coupling. We think there is serious question as to whether this is objectionable since the witness was familiar with the water tank from his own knowledge. However, if any error was committed in respect to this testimony, it was not prejudicial. No issue of contributory negligence on the part of plaintiff was ever raised by the pleadings, and so the question tendered did not concern any essential issue in the case. In addition, defendant went thoroughly into the same subject with three of its own witnesses. See Copenhaver v. Northern Pac. Ry Co., 42 Mont. 453, 113 P. 467.

The claimed hearsay testimony and the objection thereto appeared in the record as follows:

"Q. What, if anything, did your father say to you as he instructed you to climb the tank?

"Mr. Mondale: Objection. Testimony of a deceased person.

"The Court: Objection overruled. You may answer.

"A. I don't know if I can remember the exact words, but he told me to get the hose out of there before someone else grabbed it and fell off."

As can be seen from the above excerpt, the hearsay objection was not raised in the district court and is raised for the first time on this appeal. Since the hearsay objection was not raised in the district court it cannot be considered by this court on appeal. Thornton-Thomas Mercantile Co. v. Bretherton, 32 Mont. 80, 80 P. 10; Forquer v. North, 42 Mont. 272, 112 P. 439; Bower v. Tebbs, 132 Mont. 146, 314 P.2d 731. See also State v. Souhrada, 122 Mont. 377, 204 P.2d 792.

The sixth question concerns claimed abuse of discretion on the part of the district court in refusing to submit interrogatories to the jury as a basis for a special verdict.

Here, the defendant attempted to have interrogatories submitted to the jury in accordance with section 93-5202, R.C.M. 1947, which provides, in part:

"In all cases the court *may* direct the jury to find a special verdict in writing upon all or any of the issues, and in all cases may instruct them, if they render a general verdict, to find upon particular questions of fact, to be stated in writing, and may direct a written finding thereon. * * * In no case shall special issues be submitted to the jury when, *in the opinion of the court,* a general verdict would be sufficient." Emphasis supplied.

From a reading of the statute, and a study of the cases, it can be seen that a submission of interrogatories to the jury is within the sound discretion of the district court and a refusal to submit such interrogatories cannot be predicated as

error unless it is a clear abuse of discretion. Rairden v. Hedrick, 46 Mont. 510, 129 P. 498; Johnson v. Butte Alex Scott Copper Co., 51 Mont. 126, 149 P. 717; Hatch v. National Surety Corporation, 105 Mont. 245, 72 P.2d 107. It should be noted that this court has never reversed a district court for refusal to submit such interrogatories.

From a consideration of the facts in the instant case, we conclude that this was not the type of case where such interrogatories are necessary. In this case a general verdict is sufficient, and it also appears that some of the proposed interrogatories are confusing and do not concern questions necessarily involved in the general verdict. Under these circumstances, the district court did not abuse its discretion in refusing to submit the interrogatories to the jury for consideration.

The seventh question concerns claimed error on the part of the district court in giving nine instructions to the jury.

We find no merit to this contention of defendant. In attacking four of the instructions, defendant has advanced no argument, in his brief, in support of his specifications of error and an assignment of error which is not argued is deemed waived. Western Mining Supply Co. v. Melzner, 48 Mont. 174, 136 P. 44.

As to the other five instructions it appears that there was a correct statement of the applicable law and we will not burden the opinion with a recital of the instructions. It should also be noted that almost all of the objections to instructions which were raised by defendant's brief were not raised in the district court during the settlement of instructions.

Defendant objected to the instructions when they were settled but on entirely different grounds than the grounds now raised on appeal. Section 93-5101, subd. 5, provides, in part, as follows:

"* * * and no cause shall be reversed by the supreme court for any error in instructions which was not specifically pointed out and excepted to at the settlement of the instructions, as

herein specified, and such error and exception incorporated in and settled in the bill of exceptions or statement of the case as herein provided.''

Because of this statutory provision many of the objections raised in the instant case cannot be considered by this court on appeal. See Pilgeram v. Haas, 118 Mont. 431, 167 P.2d 339.

The eighth question concerns a claim that the awarded damages were excessive which was raised as one of defendant's grounds in its motion for a new trial.

Plaintiff was awarded a judgment of $63,317.70 and costs. The witnesses who testified as to damages were the plaintiff and Dr. Clayton Allard, an orthopedic surgeon. The testimony of both of these witnesses as to damages, pain and suffering was entirely uncontradicted by defendant.

In the recent Montana case of Dahlin v. Rice Truck Lines, 136 Mont. 430, 352 P.2d 801, 804, it is stated:

''* * * The rule has been established in this state that the amount of damages is committed first to the discretion of the jury, and next to the discretion of the trial judge, who, in passing upon the motion for new trial, may set it aside if it is not just. * * * In Fulton v. Chouteau County Farmers' Co., supra, 98 Mont. 48, at page 74, 37 P.2d 1025, at page 1034, it was said:

'' 'We must bear in mind that in this class of cases, ''there is no fixed measuring stick by which to determine the amount of damages, other than the intelligence of the jury'' (McNair v. Berger, 92 Mont. 441, 15 P.2d 834, 839), to whom, of necessity is allowed a wide latitude, and ''so long as we have a system which confides to juries the duty to determine the issues involved in this character of cases and to fix the amount of compensation to be paid unless the result of their deliberation is such as to shock the conscience and understanding, it must be accepted as conclusive'' (Autio v. Miller [92 Mont. 150, 11 P.2d 1039], above); ''this court will not substitute its judgment for that of the jury, especially where, as here,

the trial court has approved the verdict by denying the motion for a new trial." (McNair v. Berger, supra)' ''.

In the instant case, plaintiff was 35 years of age and in good health at the time of the accident. His leg was badly broken by the fall and he was conscious at all times during the accident and was in extreme pain at that time. He was forced to undergo operations on his leg because of the accident. The leg carried an intramedullary nail for a period of a year after the accident and this nail caused constant pain and suffering during this period of time. The injured leg has been permanently shortened by two inches as a direct result of the accident. At the time of the trial the leg still ached on days of inclement weather and caused the plaintiff considerable pain when he was on it for any length of time.

The condition of the leg greatly restricted the leisure activities of plaintiff such as hunting, fishing, golfing and dancing. It also restricted his work capabilities. In addition, the plaintiff sustained damages of $1,017.70 for medical expenses, and approximately $25,000 for loss of wages for the two years that he could not work as a result of the accident.

From the record of the case, we find that the damages were not awarded under the influence of passion or prejudice and the verdict does not shock the conscience of this court. See R.C.M.1947, § 93-5603, subd. 5. The district court was correct in denying the motion for new trial on this ground.

For the reasons stated, the judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES ADAIR and ANGSTMAN concur.

MR. JUSTICE BOTTOMLY:

I agree with the result reached by the majority opinion, but not with all that is said therein.